After review of the record and the applicable law, we affirm the defendant's convictions and sentences.

**Mary Lisa Gaston LUPLOW**

v.

**Martin Duane LUPLOW.**

Court of Appeals of Tennessee, at Nashville.

March 25, 2014 Session.

June 19, 2014.

Tyree B. Harris, IV, and Katherine A. Brown, Nashville, Tennessee, for the appellant, Mary Lisa Gaston Luplow.

T.J. Cross–Jones and H. David Kittrell, Nashville, Tennessee, for the appellee, Martin Duane Luplow.

## OPINION

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

This is an appeal in a divorce case, where Wife appeals the classification and division of marital property and debt, the calculation of the division of the proceeds from the sale of the marital residence, the dismissal of the contempt petition she filed against Husband, and the failure to award her attorney fees. Husband appeals the classification of certain real property and the division of marital debt; he also requests his fees on appeal. We modify the judgment allocating the marital debt and awarding $16,691 to Wife as alimony *in solido;* we affirm the judgment in all other respects.

## I. PROCEDURAL HISTORY

Mary Lisa Gaston Luplow ("Wife") and Martin Duane Luplow ("Husband") were married on September 10, 1983; two children were born of the marriage. Wife filed a complaint for divorce on June 22, 2010, alleging inappropriate marital conduct and irreconcilable differences. Husband answered the complaint on July 2 and counterclaimed for divorce, also alleging inappropriate marital conduct and irreconcilable differences. On October 25 the court entered an order requiring Husband to vacate the marital residence, to pay $3,800 per month in *pendente lite* alimony, and to reimburse Wife for various expenditures.

On June 24, 2011, Wife moved to have Husband reimburse her for unpaid mortgage payments, to reinstate major medical coverage, and to pay a $69,952.68 judg-

ment resulting from a lawsuit against him; Wife also requested that she be allowed to negotiate settlements of outstanding credit card balances. On September 12 the court entered an order which, *inter alia*, granted Wife a judgment for unpaid alimony in the amount of $7,700 and ordered Husband to pay $2,200 per month in *pendente lite* alimony; the court ordered the judgment to be paid out of the funds from the sale of the marital residence which were being held in escrow. Wife filed a petition for criminal contempt on October 20 alleging that Husband had failed to pay alimony in accordance with the September 12 order.

Trial began on August 28, 2012; on that date, the court entered an order declaring the parties divorced pursuant to Tenn. Code Ann. § 36–4–129. The remaining matters were heard on December 11, 2012 and January 23, 2013. The court entered a Final Order of Divorce on February 14. Pursuant to Wife's motion to alter or amend, the court entered an order on May 14 requiring Husband to pay Wife one-half of any recovery that may result from potential legal action related to the lawsuit and judgment against Husband.[1]

## II. ISSUES ON APPEAL

Wife appeals the classification and division of marital debt, the calculation of the division of the proceeds from the sale of the marital residence, the dismissal of her contempt petition, and the failure of the court to award attorney fees. Husband appeals the classification of one parcel of real property as Wife's separate property and division of marital debt; he also requests his fees on appeal.

1. Husband had testified that he intended to file suit against the attorney who represented him in the litigation which gave rise to the judgment.

## III. STANDARD OF REVIEW

■ Review of the trial court's findings of fact is *de novo* upon the record accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. *See* Tenn. R.App. P. 13(d); *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn.2006). Review of the trial court's conclusions of law is *de novo* with no presumption of correctness afforded to the trial court's decision. *Kaplan*, 188 S.W.3d at 635.

## IV. ANALYSIS

### A. Classification and Division of Property and Debt

■ The division of the marital estate begins with the classification of the property as separate or marital property. *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn.Ct. App.2001). Therefore, separate property should not be included in the marital estate. *Woods v. Woods*, No. M2002–01736–COA–R3–CV, 2005 WL 1651787, at *3 (Tenn.Ct.App. July 12, 2005). Property classification is a question of fact. *Bilyeu v. Bilyeu*, 196 S.W.3d 131, 135 (Tenn.Ct. App.2005). Thus, we review the trial court's classification using the standard of review in Tenn. R.App. P. 13(d).

■ Once property has been classified as marital property, the court should place a reasonable value on property that is subject to division.[2] *Edmisten v. Edmisten*, No. M2001–00081–COA–R3–CV, 2003 WL 21077990, at *11 (Tenn.Ct.App. May 13, 2003). Once the marital property has been valued, the trial court is to divide the marital property in an equitable manner. Tenn.Code Ann. § 36–4–121(a)(1); *Miller*, 81 S.W.3d at 775. A division of

2. The parties do not contest the valuation of the property or debt.

marital property in an equitable manner does not require that the property be divided equally. *Robertson v. Robertson,* 76 S.W.3d 337, 341 (Tenn.2002). Dividing a marital estate is not a mechanical process but, rather, is guided by considering the factors in Tenn.Code Ann. § 36–4–121(c). *Kinard,* 986 S.W.2d at 230. Although marital debt is not defined by statute, it is subject to equitable division in the same manner as marital property and its definition corresponds with that of marital property provided in Tenn.Code Ann. § 36–4–121(b)(1)(A). *Larsen–Ball v. Ball,* 301 S.W.3d 228, 233 (Tenn.2010). Trial courts have wide latitude in fashioning an equitable division of marital property, *Fisher v. Fisher,* 648 S.W.2d 244, 246 (Tenn.1983), and this court accords great weight to the trial court's division of marital property. *Wilson v. Moore,* 929 S.W.2d 367, 372 (Tenn.Ct.App.1996). Thus, we defer to the trial court's division of the marital estate unless it is inconsistent with the factors at Tenn.Code Ann. § 36–4–121(c) or is not supported by a preponderance of the evidence. *Brown v. Brown,* 913 S.W.2d 163, 168 (Tenn.Ct.App.1994).

In disposing of the marital property and debt, the court held in part:

It is further ORDERED that from the proceeds of the parties' marital residence, after paying the negotiated balances on the Chase card and Discover cards in the amounts of $8,350.29 and $4,479.50, respectively, the Wife shall be awarded the sum of $19,804.65, and the Husband shall be awarded the remaining balance of approximately $554.45.[3]

\* \* \*

It is further ORDERED that the Husband is awarded a judgment against the Wife in the amount of $12,280, representing one-third of the parties' son's junior and senior years' tuition payment ... for which statutory interest shall accrue and execution may issue.

It is further ORDERED that the Wife shall be responsible and indemnify and hold the Husband harmless for the American Express card and Bank of America card in the name of the Wife & /or Gaston Realty Company and shall indemnify and hold the Husband harmless thereon.

It is further ORDERED that the Husband shall be responsible for the outstanding balance owed on the Citi-Bank credit card titled in the name of the Wife and/or Gaston Realty Company in the amount of approximately $16,691. Therefore the Wife shall be awarded a judgment against the Husband in said amount as alimony *in solido,* the payment of this indebtedness being necessary for the support and maintenance of the Wife.

\* \* \*

It is further ORDERED that the Wife is awarded the property at 2244 Castleman Drive, Nashville, TN as her sole and separate property free and clear of any claim of the Husband, and the Husband is divested of any right, title and interest therein, and all interest shall vest solely in the Wife. The Wife shall be responsible for any outstanding indebtedness on said property and shall indemnify and hold the Husband harmless thereon.

Wife contends that the court's division of the marital property and debt was inequitable with respect to the court's determinations that: Wife and Husband would be equally responsible for the judgment rendered against Husband; Wife would be

---

**3.** The court also held that the $69,952.68 judgment against Husband would be deducted equally from Husband and Wife's portion of the proceeds of the sale.

solely liable for the entire outstanding line of credit on her separate property (the "Castleman property"); Wife would be solely liable for the balance of two credit cards held in the name of her father's company, Gaston Realty; and Wife would be responsible for one-third of the private school tuition for one of the children. Husband contends that the court erred in holding that the Castleman property was Wife's separate property, in the division of certain debts, and in awarding Wife the amount of the CitiBank debt as alimony *in solido*.

### 1. The Judgment Against Husband

The marital residence was sold during the pendency of the divorce proceeding. At the time of sale, the parties learned that there was a lien against the property arising from a $69,952.68 judgment rendered against Husband; the lien was paid from the proceeds of sale, resulting in the parties realizing $122,643.78 from the sale. In the final decree the court made the following ruling with respect to the judgment:

> [The $122,643.78 realized from the sale] was further reduced by a judgment lien against the property in the amount of $69,952.68 as a result of an employment-related lawsuit against Husband.... The Court finds ... that the Husband's work-related activity was in furtherance of earning income for the benefit of the parties which would constitute a marital asset. Therefore, any gain or loss related to the Husband's employment activities would be marital.

The court held that the remaining proceeds, after certain adjustments, would be divided equally between the parties. Wife moved to alter or amend the decree, contesting the court's determination that the

judgment should be equally divided; the court denied Wife's motion.

Wife contends that the judgment was not a marital debt because it was incurred solely as a result of Husband's malfeasance and she did not know of the debt; in the alternative, she asserts that the equal division of the debt was inequitable.

■ Wife's contention that the judgment was not a marital debt is not well taken. " '[M]arital debts' are all debts incurred by either or both spouses during the course of the marriage *up to the date of the final divorce hearing.*" *Alford v. Alford,* 120 S.W.3d 810, 813 (Tenn.2003) (emphasis added). The judgment was rendered and the debt thereby incurred prior to the final divorce hearing; thus, we affirm the determination of the trial court that the judgment lien was marital debt and subject to equitable division.

In *Alford v. Alford,* the Supreme Court held that four factors should be considered in dividing marital debt: (1) the debt's purpose; (2) which party incurred the debt; (3) which party benefitted from incurring the debt; and (4) which party is best able to repay the debt. *Alford,* 120 S.W.3d at 813 (citing *Mondelli v. Howard,* 780 S.W.2d 769 (Tenn.Ct.App.1989)).[4] The final decree here does not show that the court applied these factors in dividing this debt; in our review, application of these factors does not support equal division of the debt.

The judgment resulted from a suit for breach of contract and misrepresentation brought by Barry Bethel—a former sales manager at the Neill–Sandler car dealership where Husband was general sales manager—against the dealership, Hus-

---

4. While the Supreme Court in *Alford* rejected classifying marital debt based on the "joint benefit" test, the court held that the four factors set forth in *Mondelli* should still be utilized in equitably distributing the marital debt. *Alford,* 120 S.W.3d at 814.

band, and others. At trial, "Bethel testified that he requested [Husband] to negotiate the terms of his employment with Neill–Sandler and asked that his compensation plan be the same as [another sales manager]; Mr. Luplow agreed to both requests"; Bethel later learned that his compensation plan was less favorable than that of the other sales manager. *Bethel v. Neill–Sandler Buick Pontiac GMC, Inc.*, M2011–00356–COA–R3–CV, 2012 WL 3027356, at \*1 (Tenn.Ct.App. July 24, 2012), appeal denied (Nov. 21, 2012).[5] The case proceeded to trial against Husband only, and the jury returned a verdict against him, awarding Bethel compensatory damages of $62,083.18[6]; Husband appealed, and the verdict was affirmed. *Id.*

The first and third *Alford* factors are not applicable in this case. Neither Husband nor Wife received a benefit from the debt and it served no discernable purpose in the context of the marriage. As respects the second factor, it is uncontroverted that Husband alone incurred the debt as the result of his conduct.[7]

Thus, the final factor we consider is who is best able to repay the judgment. In making a separate determination with respect to other marital debt, the trial court found that Husband was the "primary wage earner during the marriage" and had the "higher earning capacity of the parties." The record supports these findings and, consistent with them, we have determined that Husband is best able to repay the judgment.[8]

■ Applying the *Alford* factors, specifically, that Husband incurred the judgment debt as a result of his malfeasance and, considering the nature and amount of the parties' other debt, is best able to repay it, we reverse the trial court's equal division of the judgment and modify the final decree to allocate full responsibility for the judgment to Husband.

---

**5.** Husband contends that we may not consider the facts set forth in *Bethel* because the opinion was not entered into the record as an exhibit at trial; this contention is without merit. It is well established that a court may take judicial notice of facts "capable of accurate and ready determination" in its own proceedings pursuant to Tenn. R. Evid. 201. *See Counts v. Bryan*, 182 S.W.3d 288, 293 (Tenn. Ct.App.2005).

**6.** Court costs and fees increased the judgment to $69,952.68.

**7.** Husband testified:
THE COURT: ... [W]hat was your understanding of the allegations against you?
THE WITNESS: I understand the allegations against me were because another sales person—another sales manager made more than [Bethel] did. That's my understanding.
Q. (By Mr. Harris) But they had only to do with your employment at the dealership, did they not, these allegations of misconduct?

A. Yes, I was—yes, my—I was employed there.
Q. It had nothing to do with your marriage?
A. No.
Q. It had nothing to do with [Wife]?
A. No.
Q. Nothing that she did or did not do, it was solely on you?
A. Yes.

**8.** The record shows that Wife was a homemaker for the majority of the marriage, earning a small amount of income each year in real estate. In the year proceeding entry of the final order of divorce, Wife was able to use her real estate license to earn close to $60,000. Husband, in contrast, worked throughout the marriage as a sales manager at various car dealerships making in excess of $100,000 per year, with the exception of a period during the pendency of the divorce proceedings when he worked as a sales representative selling home alarm systems making a minimal income.

### 2. Distribution of the Proceeds of Sale of the Marital Residence

The sale of the marital residence yielded $122,643.78; the judgment from the Neill–Sandler litigation was deducted from the proceeds, leaving $52,691.10, which was placed into an escrow account. Pursuant to Wife's motions, on September 11, 2011, the court ordered $8,230.20 in alimony payments and medical insurance premiums paid to Wife out of the account, and on February 15, 2012, the court ordered payment of $11,000 in unpaid alimony; these payments left $33,460.90 remaining in the account. In the final decree, the court noted that Wife had negotiated the settlement of outstanding credit card debt of $8,362.29 for a Chase card and $4,719.50 for a Discover card, and that these settlements had also been paid out of the account with the parties' agreement and the court's permission; these payments left $20,379.11 in the escrow account. Of this balance, the court awarded $19,804.65 to Wife and $554.45 to Husband.

Wife first contends that the trial court deducted the alimony payments owed by Husband from her portion of the proceeds from the sale of the marital residence. We have reviewed the court's calculations and find that the court deducted the alimony payments from Husband's portion of the proceeds; the difference between Husband and Wife's award is the $19,362.29 in alimony paid from the funds in escrow while the divorce was pending.[9]

Consistent with our modification of the final decree to allocate the judgment in the Neill–Sandler litigation to Husband alone, we recalculate the distribution of the proceeds of the marital home and modify the final decree to award Wife the $20,379.12 remaining in escrow and award her a judg-ment in the amount of $34,401.89 against Husband for the balance.

### 3. The Castleman Property

The court found that Wife inherited the Castleman Property when her father died, and that it was not transmuted into a marital asset. Husband contends that the Castleman property was transmuted into marital property because the parties took out a line of credit in both their names which was secured by the property and because he paid $3,641[10] in taxes on the property during the pendency of the divorce proceedings. Wife contends that trial court erred in finding that the entire line of credit secured by the Castleman property was her separate debt.

### i. Classification of the Castleman Property

■ Our Supreme Court has defined transmutation as follows:

> [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property.... The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

---

9. It appears that the court's order contains a typographical error and that the court should have awarded Husband $574.45, rather than $554.45.

10. Husband testified that he paid $5,641.63 for taxes in 2008. The court, however, attributed $3,641.63 to Husband in its final order; Husband does not contest the court's finding in this respect, and adopts the court's figure in his brief.

*Langschmidt v. Langschmidt,* 81 S.W.3d 741, 747 (Tenn.2002) (citing Homer H. Clark, *The Law of Domestic Relations in the United States,* § 16.2 at 185 (2d ed.1987)). In *Fox v. Fox,* No. M2004–01616–COA–R3–CV, 2006 WL 2535407, at *5 (Tenn.Ct.App. Sept. 1, 2006), this Court defined four of the most common factors used to determine whether transmutation of real property has occurred: "(1) the use of the property as a marital residence; (2) the ongoing maintenance and management of the property by both parties; (3) placing the title to the property in joint ownership; and (4) using the credit of the non-owner spouse to improve the property." Whether or not transmutation has occurred is a fact question. *See id.* at *3. Applying the factors set forth in *Fox,* the record does not support a finding that the Castleman property was transmuted to marital property.

The parties do not contest the finding that the property was not used as the marital residence and that the property was titled in Wife's name only. Thus, we look to the second and fourth factors. With respect to these factors, the court found:

> While the Husband's credit was used to borrow against the property and he is jointly obligated on that debt, those funds were used to pay off the outstanding indebtedness on the first mortgage which was in the amount of approximately $28,000, and the balance was used for the children's tuition and other marital expenses benefitting the parties. The payment on this debt is interest only. The parties simply withdrew equity from the property from which both benefitted. While the Husband established a contribution in 2010 when he paid approximately $3,641 on the Castleman Drive property taxes,

this is the only contribution he could prove during the twenty years of the Wife's ownership interest. The Court finds the Husband's property tax payment a *de minimus* contribution under the circumstances. The Wife testified that the income from this property [was] sufficient to pay all expenses on the property including the mortgage, insurance, maintenance and property taxes. The Wife managed the property, and the Court finds her testimony to be persuasive. The Court therefore finds that the property ... constitutes a separate asset of the Wife.

The evidence does not preponderate against these findings. Wife testified that rental income from the Castleman property was paid into the Gaston Realty account and that mortgage payments, maintenance payments, and taxes were paid out of that account. While Husband testified that he undertook repairs on the property, Wife testified that he did not; the court specifically credited Wife's testimony in this respect. Husband testified that he paid the 2008 property taxes in 2010, while Wife testified that the taxes were paid out of the couple's joint account; the court acknowledged this payment in the final decree. Wife undertook the ongoing maintenance and management of the property, and we agree with the trial court's holding that one year's payment of taxes from marital funds was *de minimus* considering the length of time Wife had her interest in the property.

■■■ The evidence shows that the Castleman property secured a line of credit which was taken out in both Husband and Wife's names and that the majority of the funds drawn from the line were used for marital purposes. The evidence does not show that the proceeds were used to im-

prove the Castleman property.[11] The fact that the couple used the Castleman property to secure a debt does not necessitate a finding that the property, in turn, was transmuted to marital property; we must assess all the factors to determine whether the Castleman property was "treated in such a way as to give evidence of an intention that it become marital property." *See Langschmidt,* 81 S.W.3d at 747. We conclude that it does not, and affirm the classification as Wife's separate property.

### ii. Classification and division of the line of credit

We next address Wife's contention that the trial court erred in determining that the entire balance of the line of credit secured by the Castleman property was her separate debt. The evidence shows that Husband and Wife drew approximately $99,000 on the line of credit secured by the property.[12] Wife testified that the monthly payment on the loan was $300, interest-only, and that the loan "balloons" in 2015 or 2018.

██ We begin our analysis with a determination of whether the debt is marital or separate. The court determined that the debt should be Wife's responsibility because the property which secured the debt was her separate property. The fact that the debt was secured by Wife's separate property, however, does not determine the appropriate classification of the debt.[13] The record shows that Husband and Wife incurred the debt during the marriage; thus, it is marital debt. *See Alford,* 120 S.W.3d at 814. We reverse the trial court's finding in this respect.

Applying the *Alford* factors to determine the equitable distribution of the debt, the record shows that both parties incurred the debt, both parties benefitted from its use, and the purpose of the debt was marital. The evidence supports the finding that Husband has the greater ability to repay marital debt. In dividing other marital debt, the court held Wife responsible for one-third and Husband responsible for two-thirds; consistent with that division, we have determined that Wife should be responsible for one-third and Husband should be responsible for two-thirds of the remaining debt on the line of credit.[14]

---

**11.** Husband testified as follows regarding the line of credit:

> THE COURT: What—where did that money go if you were a part of that transaction? THE WITNESS: It stayed in the account, and [Wife] took care of all the bills and all the money. Some probably went into our joint checking account, and I don't know where else it went, but ... I don't specifically know where the rest of it went.

Wife testified that she and Husband took out the line of credit in 2008 to remodel the marital home and to pay for the children's tuition.

**12.** Of these funds, $28,050.70 was used to pay the existing mortgage on the Castleman property and the remainder was used for marital expenses, including the children's tuition. Wife concedes that $28,050.70 used to repay the existing mortgage on the Castleman property is her obligation. Accordingly, we need only address the classification and division of the remaining funds drawn on the line of credit.

**13.** *See Yattoni–Prestwood v. Prestwood,* 397 S.W.3d 583, 592 (Tenn.Ct.App.2012), appeal denied (Jan. 9, 2013) (finding that a line of credit taken out during the marriage on Wife's separate real property was marital debt); *see also Kinard v. Kinard,* 986 S.W.2d 220, 233 (Tenn.Ct.App.1998).

**14.** Our division of the debt on the line of credit differs from that of the judgment against Husband and is based upon the unique character and circumstances of the judgment as well as the fact that the proceeds from the line of credit were clearly used for marital purposes.

#### 4. *Credit Card Debt*

The parties raise various issues with respect to the credit card debt which accrued during the marriage. The trial court made the following determinations:

> The Wife also claims that the remaining three unsecured credit card debts in her name jointly with Gaston Realty constitute marital debt. These are the Citi-Bank card with a balance of approximately $16,691 as of June, 2009; the American Express card with a balance of approximately $14,326 as of November, 2009 and the Bank of America card with a balance of approximately $10,260 as of September, 2009. The Court finds that the aforesaid credit cards were used primarily by the Wife related to Gaston Realty and her business activities. The Court finds, however, that they contain some charges that are marital in nature. The Court further finds that the Wife had complete control over the aforesaid cards and is therefore responsible for comingling the business and marital debt. The Court therefore finds the Wife shall be responsible for the American Express card and the Bank of America card and shall indemnify and hold Husband harmless thereon. The Husband shall be responsible for the CitiBank credit card; therefore, the Wife shall be awarded an in solido alimony award against the Husband in the amount of $16,691. In the event the Wife negotiates a settlement with Citi-Bank for less than the face value of the debt, the Husband's alimony obligation shall be reduced accordingly.

Husband contends that neither party is responsible for the debt on three of the credit cards because the cards are in the name of Gaston Realty; essentially, Husband contends that the credit card debt is not marital debt.

Wife testified that Gaston Realty was her father's sole proprietorship, that she worked as an independent contractor for the business, and that she had access to a Bank of America credit card, a CitiBank credit card, and an American Express credit card through her work. Wife testified that the Bank of America card was acquired in "the '80s" in the name of Gaston Realty and Wife; that the CitiBank card was acquired in "the '80s or '90s" in the name of Gaston Realty, Wife, and Husband [15]; and that the American Express card was acquired in "the '90s" in the name of Gaston Realty and Wife. When asked by the court who the "responsible party" was on the debt, Wife testified that it was her debt.

■ Husband's contention is not well-taken. The record shows that Wife was liable for the charges made on the cards as each card was in her name as well as Gaston Realty's. The debt was incurred during the marriage; it is marital and subject to equitable division. The court properly classified the debt as marital.

Wife does not contend that the debt was not marital debt; rather, she contends that the debt was inequitably divided because the division was based on an incorrect finding that she used the cards for business expenses; she asserts that the debt should have been "assigned to the parties on a pro rata basis based upon their relative incomes during the marriage." Wife has cited no evidence that preponderates against the finding that the cards were used in part for business expenses. To the contrary, Wife testified that she used all three cards for "[p]ersonal and business" use and that she "kept the business [Gaston Realty] going" after her father's death. The finding that Wife used the cards for business purposes was sufficient

---

**15.** Wife also testified that Husband was "an authorized signatory" on the CitiBank card.

to support the allocation of this marital debt on two of the cards to her.[16]

Having affirmed the trial court's findings and given the deference we afford to the trial court's division of marital property, we affirm the trial court's division with respect to the credit card debt.

■ Finally, Husband contends that the court erred in awarding Wife the balance of the CitiBank card—$16,691—as alimony *in solido* because the court also specifically stated that the award would be reduced according to any negotiated settlement Wife could obtain. We agree; alimony *in solido* is not modifiable. Tenn.Code Ann. § 36–5–121(h)(2). Accordingly, we modify the decree to hold that Husband's obligation to pay the CitiBank balance is a judgment rather than an award of alimony *in solido*.

### 5. *Private School Tuition*

With respect to the private school tuition, the court found:

> The Husband claims that he paid various marital debts during this action totaling approximately $58,026 for which he is entitled to reimbursement or contribution by the Wife. The Court finds that Husband was the primary wage earner during the marriage and while he lost his job as a result of his inappropriate behavior, he still had the higher earning capacity of the parties. As a result, the Husband will be responsible for the aforesaid debt with the exception of the Franklin Road Academy tuition for the parties' remaining minor child, totaling $37,886. The Court finds that the Husband shall be responsible for two-thirds of the tuition, and the Wife

shall be responsible for one-third; therefore, the Wife shall reimburse the Husband the sum of $12,280, representing one-third of the aforesaid indebtedness.

Wife contends that she should not be held responsible for any of the private school tuition because (1) Husband did not have Wife's approval to keep the child in private school; and (2) Husband received money from his mother to pay the tuition.

The record shows that the parties' youngest son attended private school for his entire education. He was a junior at Franklin Road Academy when Husband and Wife separated, and completed his junior and senior years prior to the end of the divorce proceedings; he lived with Husband during his senior year. Husband testified that he and Wife both signed the contract with Franklin Road Academy for the child's junior year, and that Husband alone signed the contract for the senior year.

■ This debt was incurred for the education of their child, consistent with his upbringing, and in his best interest. Wife has articulated no authority or other basis for us to hold that her consent to his enrollment in private school, under the circumstances presented, was required or that the court erred in allocating a portion of the tuition to her in the division of marital debts.

■ With respect to Wife's second contention, the evidence does not preponderate against the trial court's finding that Husband, and not his mother, incurred the tuition debt. Husband testi-

---

**16.** Husband also contends that the trial court erred in holding him responsible for a portion of the credit card debt because there was insufficient evidence of the credit cards' balance. Wife testified about the credit card balances by referencing three notebooks containing the bank statements for the cards; the notebooks were not introduced as exhibits. Wife's testimony, which was subject to cross-examination, is competent proof of the balance of the credit cards.

fied that during the divorce proceedings, he was employed making a minimal income.[17] When asked by the court how he could afford to make the tuition payments given his income, Husband responded that he borrowed the money from his mother and that he signed several notes promising to repay the debt. Although Husband did not produce those notes, the court found his testimony to be credible. Because the trial court observes the witnesses as they testify, it is in the best position to assess witness credibility. *Frazier v. Frazier*, No. W2007–00039–COA–R3–CV, 2007 WL 2416098, *2 (Tenn. Ct.App. Aug. 27, 2007) (citing *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn.1999)). Therefore, we give great deference to the court's determinations on matters of witness credibility. *Id.* "Accordingly, we will not reevaluate a trial judge's credibility determinations unless they are contradicted by clear and convincing evidence." *Id.* No such clear and convincing evidence has been cited to us in this case.

Given our standard of review, we affirm the trial court's division of the tuition debt.[18]

## B. *Pendente Lite* Alimony

Wife also contends in her reply brief, for the first time, that the trial court erred in holding that Husband's *pendente lite* alimony terminated on May 1, 2012. Reply briefs are permitted in order to allow the appellant to "reply to the brief of the appellee." Tenn. R.App. P. 27(c). Wife did not raise this issue in her brief in chief and the issue was not raised by Husband in his brief; thus, Husband had no chance to respond to this issue. "Generally speaking, it is not the office of a reply brief to raise issues on appeal." *Gentry v. Gentry*, E2000–02714–COA–R3–CV, 2001 WL 839714 (Tenn.Ct.App. July 25, 2001). For that reason, we decline to address this issue.

## C. The Contempt Petition

Wife filed a petition in October 2011 seeking to have Husband held in criminal contempt for his failure to pay *pendente lite* alimony for September and October. There was no hearing set, and adjudication of the petition was reserved until the final hearing. On the first day of trial, Wife elected to proceed with civil contempt rather than criminal. In the final order of divorce, the trial court made the following findings with respect to Wife's Petition for Contempt:

> For the time period in question, the Court finds that the Husband was working at a security firm company selling alarm systems on commission. It is true that the Husband had lost his prior well-paying position in automotive sales as a result of his personal misconduct. However, the fact remains that the Husband's income had been dramatically reduced. The Court also noted that while the Petition for Contempt was filed in October, 2011, it was not set for hearing,

---

17. Husband testified that, while the divorce proceedings were pending, he made approximately $2,200 per month as an employee of a home security system company.

18. In the argument section of his brief, Husband asserts that Wife should be responsible for a portion of all of the $58,026 in debt incurred by Husband during the pendency of the divorce proceedings and not only the portion of the debt constituting tuition; the remaining debt not allocated in part to Wife included country club fees, medical bills, and other various debts. The court declined to hold Wife responsible for this additional debt based in part on its finding that Husband was the primary wage earner during the marriage. As stated above, the evidence does not preponderate against this finding, and we do not otherwise find a reason to alter the trial court's division of the debt in this respect.

and its adjudication was deferred until the final hearing. Moreover, at the Wife's request, the Court allowed her to encroach on the proceeds from the sale of the parties' marital residence to supply her with funds with which to live rather than force the adjudication of this contempt petition. The Court also notes that during the time in question, the parties' minor son was living with the Husband, and the Wife was not able to make any contribution to that child's support.

In view of all the foregoing, the Court finds that the Husband did not have the present ability to pay the monthly support as it became due; therefore, the Husband's failure to pay the support was not willful.

Wife contends that the trial court should have found that Husband's failure to pay was willful because Husband did not present any proof at trial that his circumstances had changed since the September 12, 2011 order setting his *pendente lite* support obligation at $2,200 per month.

 An act of contempt is an intentional act that hinders, delays, or obstructs the court's administration of justice. *Ahern v. Ahern*, 15 S.W.3d 73, 78 (Tenn. 2000). An act of contempt may be either civil or criminal. *Reed v. Hamilton*, 39 S.W.3d 115, 118 (Tenn.Ct.App.2000). Civil contempt sanctions, unlike criminal contempt sanctions, are intended to coerce a party to comply with the court's order. *Mays v. Mays*, No. M2010–02479–COA–R3–CV, 2012 WL 1424970 (Tenn.Ct.App. Apr. 23, 2012). Persons found to be in civil contempt "hold the keys to the jail" and may purge themselves of contempt by complying with the court's order. *Id.* Persons who have failed to make payments required by a previous court order may be held to be in civil contempt only if the court concludes, by a preponderance of the evidence, that they have not made the payments even though they have the present ability to do so. *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 474 (Tenn. 2003); *Loy v. Loy*, 32 Tenn.App. 470, 222 S.W.2d 873, 877–78 (1949).

 Wife's Petition for Contempt addressed Husband's failure to pay *pendente lite* alimony for September and October 2011. In February 2012, however, the court ordered $11,000 in outstanding alimony payments to be paid out of the proceeds of the sale of the marital home; the $11,000 represented the unpaid alimony from September 2011 to January 2012. As the purpose of civil contempt is to coerce compliance with the court's order, a finding of contempt would serve no purpose. The February 2012 order satisfied Husband's September and October 2011 alimony obligation, and thus, he has nothing left to perform with respect to his alimony obligation for those months. On different grounds, we affirm the trial court's dismissal of the petition for contempt against Husband.[19]

### D. Attorney Fees

#### 1. At Trial

Wife contends that the court erred in declining to award her attorney fees at trial. Wife asserts that she is entitled to attorney fees based upon her inability to pay.

Attorney fees in divorce proceedings may be awarded in the form of alimony *in solido*. In determining whether to award attorney fees, the trial court should again consider the factors set out in Tenn.Code

---

19. Furthermore, we have reviewed the record and have determined that the evidence does not preponderate against the trial court's finding that Husband's failure to pay alimony was not willful.

Ann. § 36–5–121(i). *Yount v. Yount,* 91 S.W.3d 777, 783 (Tenn.Ct.App.2002); *Lindsey v. Lindsey,* 976 S.W.2d 175, 181 (Tenn.Ct.App.1997). Our courts have found an award of attorney fees to be most appropriate where the disadvantaged spouse does not have enough liquid assets to pay his or her own attorney fees and the obligor spouse is able to pay. *Yount,* 91 S.W.3d at 783; *Manis v. Manis,* 49 S.W.3d 295, 307 (Tenn.Ct.App.2001); *Lindsey,* 976 S.W.2d at 181.

 The decision of whether or not to award attorney fees is within the sound discretion of the trial court, and the court's decision will not be disturbed upon appeal unless that discretion has been abused. *Yount,* 91 S.W.3d at 783; *Garfinkel v. Garfinkel,* 945 S.W.2d 744, 748 (Tenn.Ct. App.1996).

 The trial court did not abuse its discretion in declining to award Wife her attorney fees at trial. Husband and Wife had accrued a great deal of debt during the marriage and at the time of the final decree there were few liquid assets to divide between the parties. Both parties are gainfully employed and Wife has successfully reentered the work force. Given the facts of this case, we cannot conclude that the court abused its discretion in requiring Husband and Wife each to bear their own fees.

### 2. *On Appeal*

 Husband seeks his attorney fees on appeal. "Whether to award attorney's fees on appeal is a matter within the

sole discretion of this Court." *Hill v. Hill,* No. M2006–02753–COA–R3–CV, 2007 WL 4404097, at *6 (Tenn.Ct.App. Dec. 17, 2007) (citing *Archer v. Archer,* 907 S.W.2d 412, 419 (Tenn.Ct.App.1995)). In determining whether an award is appropriate, we take into consideration the "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered." *Id.* at *6 (citing *Dulin v. Dulin,* No. W2001–02969–COA–R3–CV, 2003 WL 22071454, at *10 (Tenn.Ct.App. Sept. 3, 2003)). Taking these factors into account, we decline to award Husband his attorney fees on appeal.

## V. CONCLUSION

For the foregoing reasons, we modify the final decree: to allocate the Neill–Sandler judgment debt to Husband alone and to enter judgment in the amount of $34,401.89 in favor of Wife against Husband; to allocate the line of credit debt one-third to Wife and two-thirds to Husband; to award Wife judgment for the CitiBank debt in the current amount of $16,691 against Husband rather than alimony *in solido.*[20] We affirm the court's ruling in all other respects.

---

**20.** While this is a money judgment in favor of Wife, we do not modify the other provisions of the final decree relating to this debt, specifically, that Wife may negotiate the CitiBank debt downward. We leave it to the parties

and, as necessary, the trial court to determine the manner in which the judgment might be modified in the event the debt is successfully reduced.