
IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 14, 2017 Session

## KELLY COLVARD PARSONS v. RICHARD JEARL PARSONS

**Appeal from the Circuit Court for Shelby County**
**No. CT-004932-13  James F. Russell, Judge**

_____

### No. W2016-01238-COA-R3-CV

_____

This is a post-divorce matter in which Ms. Parsons filed a petition for civil and criminal contempt against her former husband, Mr. Parsons.  Ms. Parsons argues that Mr. Parsons unilaterally modified the terms of their divorce by failing to compensate her for what she alleges to be a vested interest in his federal retirement benefits.  At the conclusion of Ms. Parsons' direct examination, Mr. Parsons moved for dismissal on the ground that Ms. Parsons did not elect whether she was seeking civil or criminal contempt at the outset of the proceedings.  The trial court dismissed Ms. Parsons' petition for contempt, finding that she did not prove contempt by clear and convincing evidence.  Because the trial court used the wrong legal standard and did not allow Ms. Parsons to complete her proof, we vacate and remand to the trial court for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded.**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J. and J. STEVEN STAFFORD, P.J., W.S., joined.

Mitchell D. Moskovitz, and Kirkland Bible, Memphis, Tennessee, for the appellant, Kelly Colvard Parsons.

Larry Rice, Memphis, Tennessee, for the appellee, Richard Jearl Parsons.

### OPINION

### I.      Background

On July 10, 2014, Appellant Kelly Parsons, and Appellee Richard Parson filed a

marital dissolution agreement (MDA) that was incorporated into a final decree of divorce, which was entered by the trial court on July 16, 2014. During the parties' marriage, Mr. Parsons was employed by the Federal Aviation Administration (FAA) as an air-traffic controller. In November 2013, seven months prior to the divorce, Mr. Parsons retired from his job pursuant to an FAA mandate, requiring retirement at the age of 56. Mr. Parsons' retirement benefits included a monthly annuity from the Civil Service Retirement System (CSRS) in the amount of $5,325. Additionally, Mr. Parsons was to receive a monthly supplement from the Federal Employees Retirement System (FERS) in the amount of $1,370 until he turned 62 and became eligible for social security. In order to maintain eligibility and continue receiving the FERS supplement, Mr. Parsons' earnings could not exceed $15,120 per year.

The terms of the parties' MDA provided that Ms. Parsons would receive 50% of Mr. Parsons' gross monthly CSRS annuity and 50% percent of Mr. Parsons' FERS supplement, to wit:

> Husband is eligible for retirement benefits under the Civil Service Retirement System based on employment with the United States Government. Wife is entitled to fifty percent (50%) of Husband's gross monthly annuity under the Civil Service Retirement System. Wife is entitled to fifty percent (50%) of Husband's FERS supplement under the Civil Service Retirement System. The United States Office of Personnel Management is directed to pay Wife's share directly to Wife. Wife shall be treated as the surviving spouse to the extent necessary to ensure Wife's receipt of her portion of the pension and FERS benefits in the event of Husband's death. Wife will receive a proportionate share of any cost of living increases made by the annuity and/or FERS supplement.
>
> The parties shall retain Attorney Blake Bourland to prepare any necessary documents required for the division of this gross monthly annuity and FERS supplement and the parties shall equally divide the cost of same.
>
> Prior to Wife's receipt of fifty percent (50%) of the annuity and FERS supplement, Husband shall pay to Wife fifty percent (50%) of said benefits to compensate Wife while the necessary documents are being processed, in the amount of two thousand six hundred eight dollars ($2,608) monthly, due on the 1st of July, 2014, and the first business day of the month each month thereafter until Wife's receipt of the pension and FERS benefit.

Pursuant to the MDA, in July 2014, the parties hired Mr. Bourland to draft and submit the necessary orders allocating Mr. Parsons' federal retirement benefits pursuant to the MDA. On August 22, 2014, the trial court entered a consent order assigning the FERS benefits. However, Mr. Bourland was unable to secure payment of Ms. Parsons' portion of the FERS supplement, due to the apparent refusal of the Office of Personnel

Management to allocate the funds pursuant to the parties' MDA.

In April 2015, pursuant to the parties' parenting plan, Ms. Parsons received Mr. Parsons' 2014 tax return and discovered that in addition to the federal retirement benefits contemplated in the MDA, Mr. Parsons had earned income in excess of $52,000, which exceeded the FERS cap of $15,120. Thus, Mr. Parsons was not eligible for the FERS supplement of $1,370 per month.

On June 22, 2015, Ms. Parsons filed a petition for civil and criminal contempt. In her petition, she alleged that Mr. Parsons should be held in willful civil and criminal contempt for failing and refusing to pay her the 50% share of his FERS supplement. Ms. Parsons also alleged, inter alia, that Mr. Parsons owed an arrearage of $4,795 for unpaid FERS benefits. The petition requested that the trial court order Mr. Parsons to pay such arrearages and, that the trial court award Ms. Parsons attorney's fees for filing the petition. The petition also alleged that Mr. Parsons owed Ms. Parsons money in relation to expenditures on behalf of the parties' children; however, these expenditures are not at issue on appeal.

On July 27, 2015, Mr. Parsons' attorney sent a letter informing Ms. Parsons that Mr. Parsons' FERS supplement had been reduced to zero beginning August 2015. The letter also indicated that "because fifty percent (50%) of Zero Dollars ($0.00) is Zero Dollars ($0.00), [Ms. Parsons] will not receive a FERS supplement payment beginning August 1, 2015."[1] A letter from the Office of Personnel Management indicated that the reason for the elimination of the FERS supplement is because Mr. Parsons' earned income during 2014 exceeded the $15,120 income cap. Ms. Parsons argues that her interest in Mr. Parsons' retirement benefits is a property interest, and as such, is non-modifiable. Ms. Parsons also argues that the entry of the final decree of divorce gave her a vested interest in one-half of Mr. Parsons' FERS supplement, and that Mr. Parsons' failure to compensate her to the extent of her vested interest was an improper unilateral modification of the final decree of divorce. Mr. Parsons argues that Ms. Parsons knew prior to the entry of the MDA and the final decree of divorce that Mr. Parsons' income would exceed the $15,000 cap. Specifically, Mr. Parsons produced a letter from his new employer, Raytheon, dated April 7, 2014 stating that his hourly rate would be $26.50 and that he could not exceed more than 1500 hours per year. However, we note that Mr. Parsons signed the permanent parenting plan on July 10, 2014 swearing and affirming that his gross monthly income was only $4,597.00 per month, which included his federal retirement benefits and his expected earnings from Raytheon.

---

[1] While the FERS supplement ended in July 2015, Ms. Parsons alleges in her petition that Mr. Parsons did not pay her the 50% share of the supplement for the months of December 2014 through June 2015 (the month the petition was filed), even though he was receiving the full FERS supplement directly from the Office of Personnel Management.

The hearing on the contempt petition was held on March 2, 2016. After Ms. Parsons' attorney completed direct examination of Ms. Parsons, Mr. Parsons' attorney made an oral motion to dismiss (see discussion infra) on the ground that Ms. Parsons failed to elect whether she was seeking civil or criminal contempt. Prior to ruling on the motion, the trial court heard statements from counsel for both parties regarding the status of the proof. The attorneys were in agreement that Ms. Parsons had not completed her proof; however, Mr. Parsons argued that the case was fundamentally flawed because it had proceeded without Ms. Parsons electing whether she was proceeding on either civil or criminal contempt. Mr. Parsons argued that the only remedy was dismissal. In order to expedite the proceeding, Ms. Parsons agreed to dismiss the criminal contempt component and proceed solely on the allegations of civil contempt. Despite statements from both attorneys that Appellant had not closed her proof, the trial court granted the motion to dismiss stating, in pertinent part, that:

> The Court is thus compelled to a conclusion that the petitioner has failed to sustain the requisite burden of proof, that is by clear and convincing evidence, of any, "civil" contempt….

> [T]he Court observes that the dilemma in which the parties now find themselves is not one of their own making. Moreover, the turn of events was not contemplated by either of these parties, in the way it has unfolded, at the time of entering the [MDA] and the [FDD].

The trial court entered its order dismissing the petition for contempt on May 19, 2016.

## II. Issues

Appellant raises the following issues as stated in her brief:

1. Did the trial court err when it dismissed Ms. Parsons' action for civil contempt based on her failure to sustain a burden of proof of "clear and convincing evidence," when the correct burden of proof for civil contempt is a preponderance of the evidence?

2. Did the trial court err when it dismissed Ms. Parsons' Petition for Civil and Criminal Contempt before Ms. Parsons completed her proof?

3. Did the trial court err in granting Mr. Parsons' motion to dismiss, which was based solely upon Ms. Parsons' failure to elect to proceed under civil or criminal contempt at the onset of the hearing, when "failure to elect" is not grounds for dismissal in Tennessee?

4. Did the trial court err when it failed to enforce the parties' Final Decree of Divorce, which was unilaterally and impermissibly modified by Mr. Parsons?

5. Did the trial court err when it failed to award Ms. Parsons her attorney fees and suit expenses related to her petition for civil and criminal contempt?

### III. Standard of Review

When reviewing a trial court' finding of civil contempt, "the factual issues of whether a party violated an order and whether a particular violation was willful, are reviewed de novo, with a presumption of correctness afforded the trial court's findings." *Lovlace v. Copley*, 418 S.W.3d 1, 17 (Tenn. 2013). Our review of the trial court's conclusions of law is de novo, with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Kendrick v. Shoemake*, 90 S.W.3d 566, 569 (Tenn. 2002); *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's decision to hold a person in contempt is entitled to great weight. *Hooks v. Hooks*, 8 Tenn. Civ. App. (Higgins) 507, 508 (1918). Accordingly, decisions to hold a person in civil contempt are reviewed using the abuse of discretion standard of review. *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993); *Moody v. Hutchison*, 159 S.W.3d 15, 25-26 (Tenn. Ct. App. 2004). This review-constraining standard does not permit reviewing courts to substitute their own judgment for that of the court whose decision is being reviewed. *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 551 (Tenn. 2006); *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). An abuse of discretion occurs when a court strays beyond the framework of the applicable legal standards or when it fails to properly consider the factors customarily used to guide that discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). Discretionary decisions must take the applicable law and relevant facts into account. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Thus, reviewing courts will set aside a discretionary decision only when the court that made the decision applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Mercer v. Vanderbilt Univ.*, 134 S.W.3d 121, 131 (Tenn. 2004); *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003).

### IV. Analysis

#### A. Burden of Proof

Ms. Parsons argues that the trial court erred when it dismissed her petition for civil contempt based on her failure to sustain a burden of proof of clear and convincing

evidence. Citing ***Oriel v. Russell***, 278 U.S. 358 (1928), the trial court ruled as follows:

> The Court is thus compelled to a conclusion that the petitioner has failed to sustain the requisite burden of proof, that is by clear and convincing evidence, of any quote, "civil", end quote, contempt.

The trial court's ruling is patently incorrect in that it applied an incorrect legal standard, *i.e.* clear and convincing evidence as opposed to preponderance of the evidence. The quantum of proof needed to find a person guilty of civil contempt is a preponderance of the evidence. ***Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth***., 249 S.W.3d 346, 356 (Tenn. 2008); ***Doe v. Bd. of Prof'l Responsibility of Supreme Court of Tennessee***, 104 S.W.3d 465, 474 (Tenn. 2003); s*ee also **Luplow v. Luplow***, 450 S.W.3d 105, 119 (Tenn. Ct. App. 2014); ***McLarty v. Walker***, 307 S.W. 3d 254, 259 (Tenn. Ct. App. 2009). Mr. Parsons argues that the trial court's analysis of civil contempt using the clear and convincing evidence standard was harmless error. We disagree. Our standard of review is clear. We will set aside a discretionary decision when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. ***Konvalinka***, 249 S.W.3d at 358 (citing ***Mercer v. Vanderbilt Univ***., 134 S.W.3d 121, 131 (Tenn. 2004); ***Perry v. Perry***, 114 S.W.3d 465, 467 (Tenn. 2003)). The trial court speaks through its orders. ***Palmer v. Palmer***, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977). From the order, supra, we can only conclude that the trial court applied the clear and convincing standard. Having applied an incorrect legal standard, the trial court erred. While this error alone is sufficient for reversal of the trial court's decision, we will now address Ms. Parsons' issue concerning completion of proof.

## B. Completion of Proof

Ms. Parsons argues that the trial court erred when it dismissed her petition for contempt before she completed her proof. Prior to ruling on the motion, counsel for both parties argued, as follows, regarding the status of the proof:

> Ms. Parsons' counsel: [W]e were finished with [Ms. Parsons'] direct when [Mr. Parsons' counsel] made the motion to dismiss. . . I don't want to correct the Court, because I think in essence everything you said, I think, is exactly what occurred except that we didn't conclude our proof. We concluded our direct examination. . . .

> Trial Court: Well, I perhaps misunderstood, but I thought we covered that. And I was specifically trying to determine whether or not the petitioner had closed her proof.

> Mr. Parsons' counsel: It is my understanding that [Ms. Parsons' counsel]

has not closed his proof either. I hate to keep agreeing with opposing counsel. Who will I argue with? But I believe he's right about that. . . . I still need to cross examine this lady. And then he gets to elect whether or not he's going to close his proof or somebody else, or put somebody else on.

Despite the foregoing statements that proof was not complete, the trial court ruled on the motion, to wit:

> The motion itself comes in a bit of an unusual procedural context in that it was made at the end of the direct examination of the Petitioner. It seems to be in the form of a motion for directed verdict at the close of the Plaintiff's proof, which we would recognize in a jury trial type context, but the court is treating it in that fashion.

In the first instance, the trial court's reasoning is confusing. This Court has repeatedly held that motions for "directed verdicts" have no place in bench trials. ***Boyer v. Meimermann***, 238 S.W.3d 249, 254 (Tenn. Ct. App. 2007); ***Burton v. Warren Farmers Coop.***, 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002) "[T]he proper motion would have been a motion for an involuntary dismissal at the conclusion of the plaintiff's proof in accordance with [Tennessee Rule of Civil Procedure] 41.02." ***Main St. Mkt., LLC v. Weinberg***, 432 S.W.3d 329, 335-36 (Tenn. Ct. App. 2013) (quoting ***Boyer***, 238 S.W. 3d at 254). In similar cases where a defendant has moved for a directed verdict in a bench trial, this Court has construed the motion as one for involuntary dismissal pursuant to Rule 41.02(2). *See, e.g.*, ***Nazi v. Jerry's Oil Co., Inc.***, No. W2013-02638-COA-R3-CV, 2014 WL 3555984, at \*4 (Tenn. Ct. App. July 18, 2014); ***Kathryne B.F. v. Michael B.***, No. W2013-01757-COA-R3-CV, 2014 WL 992110, at \*3 n.2 (Tenn. Ct. App. March 13, 2014); ***In re Adoption of Jordan F.J.***, No. W2013-00427-COA-R3-PT, 2013 WL 6118416, \* (Tenn. Ct. App. Nov. 20, 2013); ***Wilson v. Monroe County***, 411 S.W.3d 431, 438-39 (Tenn. Ct. App. 2013). Therefore, we will construe the trial court's order as if it were an order granting a motion for involuntary dismissal under Rule 41.02(2).

Tennessee Rule of Civil Procedure 41.02(2), which governs involuntary dismissals in bench trials, provides as follows:

> After the plaintiff in an action tried by the court without a jury **has completed the presentation of plaintiff's evidence**, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court shall reserve ruling until all parties alleging fault against any other party have presented their respective proof-in-chief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment

until the close of all the evidence. If the court grants the motion for involuntary dismissal, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment.

Tenn. R. Civ. P. 41.02(2) (emphasis added). Rule 41.02(2) clearly contemplates that the proper time to lodge a motion for involuntary dismissal is after plaintiff "completed the presentation of plaintiff's evidence." Tenn. R. Civ. P. 41.02(2); *see also Burrow v. Barr*, No. 01A01-9806-CV-00311, 1999 WL 722633, at *5 (Tenn. Ct. App. Sept. 17, 1999). The Tennessee Supreme Court has stated that Rule 41.01(2) "contemplates that the plaintiff's evidence shall be heard and evaluated by the court prior to any involuntary dismissal order at trial." *Harris v. Baptist Mem'l Hosp.*, 574 S.W.2d 730, 731 (Tenn. 1978). Accordingly, this Court has consistently held that a trial court's dismissal of a case prior to the close of plaintiff's proof is reversible error. In *Ruff v. Raleigh Assembly of God Church, Inc.*, No. 02A01-9410-CV-00226, 1996 WL 9730, at *4 (Tenn. Ct. App. Jan. 9, 1996), we held that the trial court erred in dismissing the case prior to the close of plaintiff's proof and remanded the case for completion of plaintiff's proof. *Id.* Likewise, in *In re G.T.B.*, No. M2008-00731-COA-R3-PT, 2008 WL 4998399 (Tenn. Ct. App. Nov. 24, 2008), the trial court dismissed the case prior to the completion of plaintiff's proof. On appeal, this Court concluded that the trial court erred in dismissing the case prior to the completion of proof, stating that "once a case has proceeded to trial, the trial court should allow [the plaintiff] to present all of its proof, subject to the rules of evidence, before deciding whether the case should be dismissed, either *sua sponte* or upon the defendant's motion." *In re G.T.B.*, 2008 WL 4998399, at *4. In this case, counsel for both parties agreed that Ms. Parsons had not yet completed her proof. Clearly, the trial court's decision to dismiss the petition when it did is reversible error.

Based on these holdings, we pretermit Appellant's remaining issues. However, we note that the trial court's order focuses solely on the issue of contempt and does not address the primary issue of non-payment of the FERS supplement. At oral argument, Ms. Parsons urged this court to make a decision concerning the merits of her claim for FERS benefits rather than remanding the matter to the trial court to allow completion of the proof and application of the appropriate burden of proof. We decline the invitation to do so. As a reviewing court, it is not our province to make an initial determination concerning the merits of an appellant's claim. This Court can only consider such matters as were brought to the attention of the trial court and acted upon or permitted by the trial court. *Jacks v. City of Millington Bd. of Zoning Appeals*, 298 S.W.3d 163, 174 (Tenn. Ct. App. 2009); *Stewart Title Guar. Co. v. Fed. Deposit Ins. Corp.*, 936 S.W.2d 266, 271 (Tenn. Ct. App. 1996); *Irvin v. Binkley*, 577 S.W.2d 677, 679 (Tenn.Ct.App.1978). Appellant has asked for attorney's fees on appeal. "Whether to award attorney's fees on appeal is a matter within the sole discretion of this Court." *Luplow v. Luplow*, 450 S.W.3d 105, 120 (Tenn. Ct. App. 2014) (internal citations omitted). We respectfully

deny Ms. Parsons' request for attorney's fees and expenses on appeal.

## V. Conclusion

For the foregoing reasons, we vacate the trial court's order and remand for further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against Appellee, Richard Jearl Parsons, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE