FILED

03/29/2017

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 14, 2016 Session

**JANE BINGHAM STREET v. ED STREET**

**Appeal from the Chancery Court for Washington County**
**No. 41981     E.G. Moody, Chancellor**

**No. E2016-00531-COA-R3-CV**

In this divorce case, Ed Street (Husband) appeals the trial court's division of property, arguing that he should not have been assigned all of the debt associated with the business assets awarded to him. Husband also asserts that the trial court erred in granting Jane Bingham Street (Wife) an award of monthly alimony *in futuro* of $2,000. Finding no abuse of discretion, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Thomas C. Jessee, Johnson City, Tennessee, for the appellant, Ed Street.

Lois B. Shults-Davis, Erwin, Tennessee, for the appellee, Jane Bingham Street.

**OPINION**

**I.**

On March 18, 2013, Wife filed a complaint for separate maintenance, asking the trial court to award her child support and spousal support, and to equitably divide the assets and liabilities of the parties. Husband filed a counterclaim for divorce. The trial court ordered Husband to provide Wife support *pendente lite* by order entered February 4, 2014, *nunc pro tunc* to September 23, 2013. Following Husband's motion to reduce

1

his support based on his alleged inability to pay, the trial court ordered his child support and spousal support to be reduced in an order entered on July 29, 2014. As will be seen below, the trial court later found that Husband had misrepresented his financial condition in his effort to obtain a reduction in his support obligations. A trial was held on November 4 and 16, 2015. The trial court set forth its findings of fact in a thorough memorandum opinion, stating, in pertinent part, as follows:

> The Husband stipulated that the Wife was entitled to a divorce on the grounds of adultery.
>
> The Wife is sixty-one years old and the Husband is seventy-five years old. The parties were married on January 13, 1990 and they have been married for twenty-five years. The parties have two children who have reached the age of majority. The Husband also has two adult children by a previous marriage.
>
> *    *    *
>
> Several of the properties that the parties owned have been foreclosed or seized by creditors. Husband and his son, who has managed some of the business interests for the Husband, testified that several of the business interests of the Husband are in a state of collapse and that there are no assets for division. However, Husband has not filed for bankruptcy or made plans to file. From the evidence introduced at trial, it is doubtful that anyone knows the true status of all of the Husband's business interests and/or trusts, including himself.
>
> In the period leading up to the parties' separation and the filing of this case, Husband unilaterally, without Wife's consent, set up a trust known as Main Street Investors Trust and transferred or caused to be transferred to the trust numerous business interests which included some marital business interests.
>
> *    *    *
>
> The Husband used marital funds for travel expenses for travel with his paramour.

2

From the 2013 Federal Income Tax Return of Husband, he had more than $662,000.00 in taxable income.

The Court had previously based a reduction of child support and alimony on Husband's one page representation of approximately $5,000.00 income per month during 2013 and a similar amount of income to Wife.

The amount of child support and alimony that was taken from Wife by reason of Husband's misrepresentation of his income through September of 2015 amounts to approximately $40,000.00.

In September, 2015, Husband filed a motion to modify alimony, alleging that he had no money for payment of his support obligations.

After the filing of this motion Husband, without leave of the Court, stopped paying Wife's residential mortgage which he had been ordered to do. The mortgage is now in arrears for several months and is in danger of foreclosure.

The Husband also stopped paying alimony in September, 2015 after the filing of the motion.

While not paying his Court ordered obligations to benefit Wife, Husband, or those acting for him, continued to pay the mortgage payment encumbering the separate property of Husband and in which property Husband's son, by his first marriage, was living and continues to live.

It is uncontested in the record that multiple bank accounts' statements for the month of September 2015 contained more than enough money to pay the mortgage on Wife's residence and to pay the alimony ordered to be paid to her.

The Husband possessed the ability to pay his Court ordered obligations in September 2015.

The tax returns filed both jointly and separately for the last several years were entered into the record. Most years

3

Husband earned several hundred thousand dollars. Although, the 2014 tax return shows a loss, the 2013 tax return showed income of more than $660,000.00. No year, other than the 2014 loss, showed less than six figure earnings for the Husband.

Husband testified that the Wife fulfilled her role as a wife and mother, having raised two fine children as a stay-at-home mom other than the time she spent working in the family businesses.

Separate from income from the family businesses, the Wife has never earned more than $1,000.00, net per month. Wife is currently employed part time as a retail sales clerk.

(Numbering in original omitted.) The trial court found Husband to be in contempt for his willful failure to pay alimony as ordered by the court.

Based on these factual findings, the trial court set forth the following conclusions of law:

Division of Property: Many of the properties that the parties owned have been foreclosed or seized by creditors. Defendant and his son, by his first marriage, testified that the many business interests of the Defendant are in a state of collapse and that there are no assets for division.

*     *     *

It is uncontested that, although title was passed to Main Street Investors Trust to various assets, the Trust never took management or actual possession of any of these assets. The transfers to the Trust were in "name only."

The Court finds that this Trust was set up to defeat Wife's interests in marital assets; the Court finds that the title transfer, without transfer of actual ownership, was fraudulent as to the interests of the Wife and that they should be removed from the Trust as the proceeds of fraud and that the ownership should revert back to that prior to the transfer.

4

The Wife should be awarded any remaining interest in the unimproved lake property and the residence in which she resides.

All remaining real property and business interests should be awarded to the Husband and he is ordered to pay, holding wife harmless, any indebtedness which he incurred in the operation of the businesses, including but not limited to, the indebtedness which Wife guaranteed and for which the parties have been sued.

In the event that Wife sells any of the properties awarded to her, she should pay, from the proceeds of sale, any debts owed against the property including business debts.

\*     \*     \*

Dissipation of Assets: From the proof, it is undisputed that Husband unilaterally created a Trust which has consumed at least $30,000.00 of the parties' assets and that Husband used marital funds to travel with his paramour. It is further undisputed that during 2013 Husband, after deduction for losses, had taxable income of more than $600,000.00. Husband's testimony is that these funds were put back in to the business interests and lost.

It is undisputed as shown by bank statements entered in the record that during the month of July 2015 that more than $204,000.00 was transferred out of a business banking account for "cash/change" orders. Therefore, by the action of Husband, or those acting for him, more than $200,000.00 was taken out of the businesses. The banking records supplied were provided by Husband. Concerning these records the Husband's son, by his first marriage, testified that $36,000.00 left over after various transfers in the month of July was the monthly "profit" in the business. Immediately, thereafter, he attempted to retract this testimony by stating that there might have been bills payable which would reduce the profit.

During that same month several hundred thousand dollars had been transferred out to an account for which no bank records

5

were supplied. Husband's son testified that this account was used to clear automatic draft payments. Such payments can be directed to any person or entity including the Husband as well as his deposit accounts. During this same month the business bank accounts were replaced with new bank accounts at the same bank.

The Court finds that, contrary to the testimony of the Husband's son, no statement entered in the record reflects that $200,000.00 per month in cash and change orders was a regular occurrence. Further, the Court finds that, during the month of July 2015, that Husband, or others acting for him, transferred more than $350,000.00 from one business bank account. Another account associated with the same business reflected transfers of more than $750,000.00 of which $350,000.00 was transferred to the account from which there were withdrawals and cash and change orders set out above.

The Court finds that the Husband and those acting in his behalf were in possession of all the records reflecting these transactions and that no records were introduced to clearly dispute or further document these transactions. The Wife is entitled to the benefit of the presumption that if records existed to dispute the transactions shown by the banking records Wife introduced that they would have been introduced by Husband.

The Court finds and holds that Husband transferred monies from the businesses during July 2015 but that the amount is not ascertainable from the record due to the obfuscation caused by the intertwining ownership interests in the businesses and the co-mingling of income and expenses from the separate businesses.

*     *     *

Alimony and Spousal Support: During the pendency of this case, Husband was ordered to pay Wife various amounts of alimony. Husband has never paid these sums to Wife but, instead, continued a practice going back many years of paying her a salary from one of the businesses. Currently,

6

Husband has paid nothing for Wife's support from his personal funds.

The Court finds that the Wife is financially disadvantaged compared to the Husband and that, in spite of his greater age and the state of his current business interests, the Husband has a far greater ability than Wife to earn and amass assets.

\*     \*     \*

The Court finds that the Wife has a need for alimony of an amount more than the Husband can pay but that the Husband has the ability to pay some. Thus, the Wife is awarded $2,000.00 per month in permanent alimony payable by the first day of each month beginning October l, 2015.

Husband is still mentally alert, as evident from his testimony, he owns significant separate property and he should be able to make a profit from his many and varied business interests, some of which are viable, based on his history.

(Underlining in original.) Husband timely filed a notice of appeal.

## II.

The issues raised by Husband are (1) whether the trial court erred in assigning him all of the business debts corresponding to the assets it awarded him, and (2) whether the court erred in awarding Wife $2,000 per month in spousal support.

## III.

This Court has set forth the standard of review of a trial court's division of marital property as follows:

> Once the marital property has been valued, the trial court is to divide the marital property in an equitable manner. Tenn. Code Ann. § 36–4–121(a)(1); *Miller* [*v. Miller*], 81 S.W.3d [771,] at 775 [(Tenn. Ct. App. 2001)]. A division of marital property in an equitable manner does not require that the property be divided equally. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002). Dividing a marital estate is

7

not a mechanical process but, rather, is guided by considering the factors in Tenn. Code Ann. § 36–4–121(c). **Kinard** [**v. Kinard**], 986 S.W.2d [220,] at 230 [(Tenn. Ct. App. 1998)]. Although marital debt is not defined by statute, it is subject to equitable division in the same manner as marital property and its definition corresponds with that of marital property provided in Tenn. Code Ann. § 36–4–121(b)(1)(A). **Larsen–Ball v. Ball**, 301 S.W.3d 228, 233 (Tenn. 2010). Trial courts have wide latitude in fashioning an equitable division of marital property, **Fisher v. Fisher**, 648 S.W.2d 244, 246 (Tenn. 1983), and this court accords great weight to the trial court's division of marital property. **Wilson v. Moore**, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996). Thus, we defer to the trial court's division of the marital estate unless it is inconsistent with the factors at Tenn. Code Ann. § 36–4–121(c) or is not supported by a preponderance of the evidence. **Brown v. Brown**, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

**Luplow v. Luplow**, 450 S.W.3d 105, 109-110 (Tenn. Ct. App. 2014).

Our standard of review of the trial court's spousal support decision is similar. As stated by the Supreme Court,

For well over a century, Tennessee law has recognized that trial courts should be accorded wide discretion in determining matters of spousal support. This well-established principle still holds true today, with this Court repeatedly and recently observing that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award.

Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. **Kinard v. Kinard**, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also* **Burlew**, 40 S.W.3d [465,] at 470 [(Tenn. 2001)]; **Robertson v. Robertson**, 76 S.W.3d 337, 340–41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." **Kinard**, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in

8

reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson*, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.' " *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. *Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011) (internal citations and footnote omitted).

## IV.

Husband argues that the trial court erred "in allocating all of the marital debt" to him. Wife correctly points out that the trial court did not allocate *all* of the marital debt to Husband, but only those debts associated with the business interests awarded to him. There is only one exception to this statement, *i.e.*, a $900 repair bill for the vehicle awarded to Wife. During the course of their twenty-five year marriage, Husband was a highly successful real estate developer. He developed real estate shopping centers as well as Walgreens, Walmart, and Lowe's stores. The parties also acquired ownership interests in numerous other businesses, including apartment rentals, senior assisted living centers in several states, a couple of check cashing/payday loan businesses, and a used car

9

dealership. Husband ran these businesses with the help of his son from an earlier marriage. Wife was named an officer in some of the businesses and occasionally signed checks and deeds in that capacity, but, generally speaking, she had very limited involvement in the operation of the companies, although she was paid a salary.

Before their separation in 2012, the parties made a lot of money and lived a luxurious lifestyle. Their jointly-filed tax return for 2010 shows adjusted gross income of $574,164. For 2011, the last year they filed jointly, that number was $399,414. Husband's adjusted gross income for 2012 was $116,307, and for 2013 it was $662,452.

At trial, Husband and his son by a previous marriage both testified to the effect that all of Husband's businesses had fallen on hard times, many were in foreclosure or incapable of producing an income stream, and that they were all "in the red," in that business debts exceeded revenues. Husband testified that his monthly income was around $1,700 per month from Social Security, and that the IRS was taking part of it for his unpaid tax obligations, for a net of about $1,300. At the time of trial, Wife was working part-time for ten dollars an hour, earning approximately $1,000 per month.

In making an equitable division of property, the trial court must consider the following statutory factors:

> (1) The duration of the marriage;
>
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
>
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
>
> (4) The relative ability of each party for future acquisitions of capital assets and income;
>
> (5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

10

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (Supp. 2016). In allocating marital debt, a trial court should consider "(1) the debt's purpose; (2) which party incurred the debt; (3) which party benefitted from incurring the debt; and (4) which party is best able to repay the debt." *Alford v. Alford*, 120 S.W.3d 810, 814 (Tenn. 2003), citing *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989).

There is no indication in the record that Wife was responsible for incurring any of the business debts. As already noted, Husband was in charge of running the businesses. We have observed on several occasions that "[m]arital debts should, where possible, follow their associated assets." *King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998), citing *Mondelli*, 780 S.W.2d at 773; *Carpenter v. Carpenter*, No. W2007-00992-COA-R3-CV, 2008 WL 5424082, at *9 (Tenn. Ct. App., filed Dec. 31, 2008); *Radebaugh v. Radebaugh*, No. M2005-02727-COA-R3-CV, 2006 WL 3044155, at *14 (Tenn. Ct. App., filed Oct. 26, 2006) ("Where possible, marital debts frequently follow their related assets"); *Lewis v. Lewis*, No. E2002-00209-COA-R3-CV, 2002 WL 31757490, at *6 (Tenn. Ct. App., filed Dec. 10, 2002). The trial court followed this general principle in this case.

Furthermore, the record supports the conclusion that Husband is in better financial position to repay the debts. The trial court found that Husband had transferred enormous sums of money from his business accounts in 2015, shortly before the trial, and that he was unable or unwilling to account for where the money went. The court further found that Husband had transferred marital interests to a trust for the purpose of defrauding Wife, and that he previously intentionally misrepresented his income to the trial court to lower his support payments. Husband's tax returns show six-figure income in every year except 2014. Wife did not work outside the home during the marriage and was earning between $12,000 and $15,000 per year at the time of trial. We hold that the trial court's division of marital property is consistent with the statutory factors of Tenn. Code Ann. § 36-4-121(c) and is supported by the preponderance of the evidence.

These same factors support the trial court's award of alimony to Wife. Spousal support is addressed at Tenn. Code Ann. § 36-5-121(i) (2014), which provides:

> In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
>
> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
>
> (3) The duration of the marriage;
>
> (4) The age and mental condition of each party;
>
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

12

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

There is no dispute that Wife has need of spousal support in this case. Husband's argument on appeal boils down to his assertion that the trial court should have believed him, and his son, when they testified that he does not have the ability to pay. It is apparent from the trial court's memorandum opinion, quoted at length above, that it did not credit this testimony. Appellate courts "are required to defer to the trial court's credibility findings, including those that are implicit in its holdings." ***Williams v. City of Burns***, 465 S.W.3d 96, 120 (Tenn. 2015). We find no abuse of discretion in the trial court's award of spousal support.

## V.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant, Ed Street. The case is remanded to the trial court for enforcement of the

13

judgment and collection of costs below.

_____
CHARLES D. SUSANO, JR., JUDGE