IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 21, 2019 Session

## CAROLYN DIANE LONG v. STEVEN LAWRENCE LONG

**Appeal from the Probate and Family Court for Cumberland County**
**No. 2014-PF-4162     Larry M. Warner, Judge**

_____

### No. E2018-01868-COA-R3-CV

_____

This divorce case involves the trial court's classification and division of the separate and marital property of the parties. The trial court did not place a valuation on any of the property that was contested, nor did it refer to or make any findings regarding the factors provided by the governing statute, Tenn. Code Ann. § 36-4-121 (2017). We vacate the trial court's order and remand with instructions to make sufficient findings of fact and conclusions of law as required by Tenn. R. Civ. P. 52.01.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate and Family Court Vacated; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

G. Earl Patton, Crossville, Tennessee, for the appellant, Carolyn Diane Long.

Jason F. Hicks, Cookeville, Tennessee, for the appellee, Steven Lawrence Long.

**OPINION**

**I.**

Carolyn Diane Long (wife) and Steven Lawrence Long (husband) were married for the first time in 1984. Following a divorce a year later, they remarried in 1987. Wife's family was involved in real estate development and investment. In 1993, wife's mother and stepfather created and funded a partnership entity known as "Pioneer Properties." The partners were wife, her brother, sister, two stepbrothers, and her

-1-

stepfather. Wife testified that the primary activity of Pioneer Properties was "buying land, subdividing it, and then selling it." It is undisputed that neither husband nor wife contributed any funds to Pioneer Properties. When wife received distributions from the partnership, she deposited them into an account jointly held by the parties.

In 1988, while they were married, the parties acquired a property on George Smith Road. At that time, they were contemplating divorce and, according to wife, they "were separated for a long time." Wife intended to move into the house on George Smith Road and live in it by herself. Husband executed a deed quitclaiming his interest in the George Smith Road property to wife in 1988. The parties reconciled and lived together in the house for several years. Later, they moved to another house and rented the George Smith Road property.

On October 31, 2014, wife filed her complaint for divorce. The only issues contested were the classification of two assets – wife's interest in Pioneer Properties and the George Smith Road property – and the division of the marital estate. By agreement, the trial was bifurcated. At the first hearing on March 10, 2017, the trial court was asked to decide whether the two contested assets were marital or wife's separate property. The parties agreed that the interests held by wife in three other business entities, Pioneer Realty, Inc., Robinson Properties Family LP, and RLW Properties, were her separate property. No value for these three assets was presented to the trial court, and it did not find or set a value for any of them.

The only witnesses at the relatively brief first hearing were husband and wife. Wife argued that, notwithstanding the fact that the two contested assets were acquired during the course of the marriage, they were gifts to her and should be classified as her separate property. Husband argued that he made substantial contributions to the preservation and appreciation of the assets, and therefore their increase in value during the marriage should be classified as marital property. Additionally and in the alternative, husband argued that the assets were converted to marital property by operation of the doctrines of commingling and transmutation.

The only factual findings pertaining to the disputed assets in the trial court's order following the first hearing are as follows:

> That with regard to the home and real property on George Smith Road, in Cumberland County, titled solely in the name of the [wife]: The [husband] conveyed his interest in said real property to the [wife], by quitclaim deed in 1988; and the parties further exhibited an intent throughout the marriage

that said real property would remain the [wife's] sole and separate property.

That with regard to the parties' interest in the partnership entity known as Pioneer Properties: This entity was a more fluid asset, with properties being bought and sold at various times throughout the marriage. The Court finds that this entity is marital property due to the fluidity of the asset and due to the fact that proceeds were regularly deposited from said partnership into a joint account of the parties.

(Numbering in original omitted).

The second hearing took place on August 17, 2018. The trial court heard testimony from the parties and a real estate appraiser. The parties agreed on the values of many, but not all, of the numerous marital real estate assets. The only factual findings contained in the trial court's final judgment state as follows:

That for at least 27 years of this 31 year marriage the wife treated all of the property the parties collectively owned as if it were owned equally by her and husband and that all of their property should now be divided equally.

Pioneer Properties is a real estate investment business owned and run by wife and her family, and it would not be feasible for husband to continue in that business relationship after the divorce.

(Numbering in original omitted).

The trial court awarded wife the entire interest in Pioneer Properties. Wife estimated the value of this asset to be $311,295.81. It does not appear from the record that husband proffered a written estimated value of the Pioneer Properties interest. During the second hearing, husband's counsel argued that the value of wife's interest was $429,527.50. To offset this award, the court awarded husband apartments on Old Mail Road that the parties agreed were worth $300,000; two parcels of land on Woodlawn Road worth $90,000, and a parcel on Rockledge Drive worth $3,000. The trial court further ordered several other real estate holdings to be sold and the proceeds split equally. The marital residence was ordered to be sold and the proceeds equally divided after payment of debts associated with the residence. The parties did not agree on the value of all these assets, including the marital residence. As noted, the trial court made no

-3-

findings of fact regarding the value of any asset of the marital or separate estates. Consequently, it is difficult to state an accounting of the division of the assets with any certainty. As appendices to her brief, wife submits two charts showing her argument as to the division according to her values, and according to husband's. Using wife's values, she states that she was awarded property worth $622,147.08, and husband awarded property worth $641,851.27. Using husband's values, wife states that the property was divided $659,109.58 to her, and $678,813.77 to husband. Wife timely filed a notice of appeal.

## II.

Wife raises these issues:

> Whether the trial court erred in classifying her interest in the Pioneer Properties partnership as marital property.
>
> Whether the trial court failed to make sufficient findings of fact and conclusions of law as required by Tenn. R. Civ. P. 52.01.

Husband raises the following additional issue:

> Whether the trial court erred in classifying the George Smith Road property as wife's separate property.

## III.

This Court has set forth the standard of review of a trial court's division of marital property as follows:

> Once the marital property has been valued, the trial court is to divide the marital property in an equitable manner. Tenn. Code Ann. § 36–4–121(a)(1); *Miller* [*v. Miller*], 81 S.W.3d [771,] at 775 [(Tenn. Ct. App. 2001)]. A division of marital property in an equitable manner does not require that the property be divided equally. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002). Dividing a marital estate is not a mechanical process but, rather, is guided by considering the factors in Tenn. Code Ann. § 36–4–121(c). *Kinard* [*v. Kinard*], 986 S.W.2d [220,] at 230 [Tenn. Ct. App. 1998]. . . . Trial courts have wide latitude in fashioning an equitable

-4-

division of marital property, *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983), and this court accords great weight to the trial court's division of marital property. *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996). Thus, we defer to the trial court's division of the marital estate unless it is inconsistent with the factors at Tenn. Code Ann. § 36–4–121(c) or is not supported by a preponderance of the evidence. *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

*Luplow v. Luplow*, 450 S.W.3d 105, 109-110 (Tenn. Ct. App. 2014). "However, we accord no presumption of correctness to the trial court's conclusions of law." *Harper v. Harper*, No. W2017-02193-COA-R3-CV, 2018 WL 5307090, at *1 (Tenn. Ct. App., filed Oct. 24, 2018), (citing *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 245-46 (Tenn. 2009)).

## IV.

### A.

We first address the trial court's treatment of wife's interest in the Pioneer Properties partnership. As we have often noted, "a trial court must identify all of the assets possessed by the divorcing parties as either separate property or marital property before equitably dividing the marital estate." *Mangum v. Mangum*, No. E2018-00024-COA-R3-CV, 2019 WL 1787328, at *8 (Tenn. Ct. App., filed Apr. 24, 2019) (quoting *McHugh v. McHugh*, No. E2009-01391-COA-R3-CV, 2010 WL 1526140, at *3 (Tenn. Ct. App., filed Apr. 16, 2010)); *Swafford v. Swafford*, No. 2017-00095-COA-R3-CV 2018 WL 1410900, at *3 (Tenn. Ct. App., filed Mar. 21, 2018). Tenn. Code Ann. § 36-4-121(b) provides, in pertinent part, the following definitions of these terms:

(1)(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date. . . .

-5-

\*　　\*　　\*

(B)(i) "Marital property" includes income from, and any increase in the value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation;

\*　　\*　　\*

(2) "Separate property" means:

(A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986 (26 U.S.C.),1 as amended;

(B) Property acquired in exchange for property acquired before the marriage;

(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);

(D) Property acquired by a spouse at any time by gift, bequest, devise or descent . . .

Because wife acquired her partnership interest while the parties were married, the initial presumption is that it is marital property. *Gant v. Gant*, No. M2015-02160-COA-R3-CV, 2017 WL 417225, at \*5 (Tenn. Ct. App., filed Jan. 31, 2017). "Wife, as the party seeking to rebut this presumption, has the burden of proving by a preponderance of the evidence that the asset is separate property." *Cox v. Cox*, No. E2016-01097-COA-R3-CV, 2017 WL 6517596, at \*4 (Tenn. Ct. App., filed Dec. 20, 2017) (internal quotation marks omitted); *Trezevant v. Trezevant*, 568 S.W.3d 595, 609 (Tenn. Ct. App. 2018). Wife testified that her interest in Pioneer Properties was a gift from her family to her alone, and that it was always intended to be separate. Husband argues that wife did

not meet her burden in establishing it was a gift, because she presented "no other supporting documentation" and "no corroborating witnesses." The trial court did not make a finding regarding whether wife met her burden to prove it was a gift, stating only that "this entity is marital property due to the fluidity of the asset and due to the fact that proceeds were regularly deposited from said partnership into a joint account." Several possible inferences could be drawn from the trial court's order. It may have implicitly credited wife's testimony that the asset was a gift, but found nevertheless that other factors militated in favor of classifying it as marital. Another possibility is that the trial court did not consider it a gift, and that was another factor requiring its marital classification. The absence of an explicit factual finding makes it impossible to tell with certainty.

Husband argues that any appreciation in value of wife's partnership interest was properly classified as marital pursuant to Tenn. Code Ann. § 36-4-121(b)(1)(B)(i), because he "substantially contributed to its preservation and appreciation." Husband testified that he worked as a realtor, selling properties for Pioneer Realty. He said that "Pioneer Properties would pay a commission to Pioneer Realty and as a realtor I would receive my commission actually from Pioneer Realty." He also testified that on occasion, he provided his opinions regarding the value or desirability of real estate to the partners of Pioneer Properties, but admitted that he had no decision-making authority. Wife testified that Pioneer Properties increased in value during the course of the marriage. She denied that husband made any substantial contribution to Pioneer Properties during the marriage.

In *Telfer v. Telfer*, No. M2012-00691-COA-R3-CV, 2013 WL 3379370, at *9 (Tenn. Ct. App., filed June 28, 2013), this Court set forth the principles applicable to the substantial contribution analysis as follows:

> Whether a spouse substantially contributed to the preservation and appreciation of the other spouse's separate property is a question of fact. *Keyt* [*v. Keyt*], 244 S.W.3d [321,] 329 [Tenn. 2007] (citing *Sherrill v. Sherrill*, 831 S.W.2d 293, 295 (Tenn. Ct. App. 1992)). Such a contribution may be either "direct" or "indirect." Tenn. Code Ann. § 36–4–121(b)(1)(D); *McFarland v. McFarland*, No. M2005–01260–COA–R3–CV, 2007 WL 2254576, at *6; 2007 Tenn. App. LEXIS 509, at *17–18 (Tenn. Ct. App. Aug. 6, 2007). Regardless, it must satisfy two requirements. First, "some link between the marital efforts of a spouse and the appreciation of the separate property must be established before the separate property's appreciation is considered

-7-

marital property." ***Langschmidt v. Langschmidt***, 81 S.W.3d 741, 746 (Tenn. 2002); *see also* ***Keyt***, 244 S.W.3d at 329. Second, the contribution must be "real and significant." ***Keyt***, 244 S.W.3d at 329; ***Wright–Miller v. Miller***, 984 S.W.2d 936, 944 (Tenn. Ct. App. 1998) (citing ***Brown v. Brown***, 913 S.W.2d 163, 167 (Tenn. Ct. App. 1994)). However, the contributions of the spouse who seeks to have the appreciation deemed marital property "need not be monetarily commensurate to the appreciation in the separate property's value, nor must they relate directly to the separate property at issue." ***Wright–Miller***, 984 S.W.2d at 944.

The trial court made no specific finding regarding whether husband made a substantial contribution to the preservation and appreciation of the Pioneer Properties interest. At the conclusion of the first hearing, the trial court orally remarked as follows:

> Pioneer Properties is a different beast in that it's very fluid. Its assets are very fluid. It's a house, two houses, five houses. Then maybe it's a tract of land and then maybe it's three or four houses. It's a constant flow of acquiring assets and disposing of assets.
>
> Okay. So if you weigh the factors of who did what in that process, the evaluation, preservation and all of that, that's very fluid, also. Because she did more, there's no question about that, than he did. I think that's a fact.
>
> However, I think the ultimate test, it's an old agency and partnership principle. It's not what you put into the partnership. It's what you do with what you take out. I think that's the ultimate test that has application in this case in that the proceeds from all of that activity were put into a joint account. Therefore, I am declaring those to be marital property.

Wife admitted that she deposited the distributions from the partnership, which totaled about $71,000, into a jointly-held checking account. She agreed that these funds should be considered a gift to the marriage and classified as marital. Wife argues that "the deposit of a partnership distribution into a joint account does not evidence an intent that the partnership interest *itself* become marital property." She relies on ***Luttrell v. Luttrell***, No. W2012-02279-COA-R3-CV, 2014 WL 298845 (Tenn. Ct. App., filed Jan.

28, 2014) to support this argument. In **Luttrell**, the wife's family gifted her corporate stock and cash in a separate trust. Ms. Luttrell deposited some of the funds from her trust account into a jointly-held account. We stated as follows:

> the record shows that Wife routinely deposited money from the investment accounts into the joint account to cover any tax liability. That money was considered a gift to the marriage. We do not think that Wife's decision to contribute a portion of the investment account funds to the marriage had any [e]ffect on the funds that remained in the investment accounts.

*Id.*, 2014 WL 298845, at *5.

A similar situation was presented in **Telfer**, wherein the wife received fractional interests in a partnership entity and an LLC as separate gifts from her family. We made the following pertinent observation:

> Husband argues on appeal that the fact that the distribution income from the companies was deposited into the parties' joint bank account and was included on the parties' joint income tax return militates in favor of a finding that the appreciation in the value of the companies was marital property. We see no link between this fact and the preservation or appreciation in value of Wife's companies. It indicates only that the periodic distributions from the companies constituted marital property, but that is not in question on appeal. Therefore, we must reject this argument by Husband.

**Telfer**, 2013 WL 3379370, at *11. Although we ultimately concluded in **Telfer** that other factors militated in favor of concluding that the disputed property was marital, the above quotes from **Telfer** and **Luttrell** support the position that simply depositing income from a separately-owned asset into a joint account does not, in and of itself, transmute the corpus of the asset into marital property.

The trial court's finding that the assets of the partnership were "fluid" implicates, to some extent, the doctrines of commingling and transmutation, which husband argued were applicable to convert wife's partnership interest to marital property. The Supreme Court has provided the following guidance on these concepts:

-9-

In addition to the provisions of Tenn. Code Ann. § 36–4–121(b)(1)(b), courts in Tennessee have recognized two methods by which separate property may be converted into marital property: commingling and transmutation.

\*     \*     \*

[S]eparate property becomes marital property [by commingling] if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur. . . . [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. . . . The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

*Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002) (brackets and ellipses in original).

The trial court did not make any specific findings regarding whether wife's partnership interest was converted to marital property by commingling or transmutation. It found that the assets of Pioneer Properties were "fluid," in that it regularly bought and sold different parcels of real estate. This finding is supported by the evidence. It is also clear that the value of the partnership fluctuated over time. However, the *nature* of wife's interest in the asset did not change during the marriage and was not "fluid." Her interest as a partner was always ownership of a portion of the partnership entity. She was not the owner of the real estate that traded hands, the partnership was. There is no evidence that the real estate bought, developed, and sold was "inextricably mingled with marital property" or "treated in such a way as to give evidence of an intention that it become marital property." *Id.* at 747. In this regard, wife testified without contradiction as follows:

-10-

I understand that the monies that I received out of Pioneer Properties that were put into the marital account, you know, is pretty much considered marital property. But the actual entity of Pioneer Properties itself has remained segregated. It's remained separate. He's never been on the account. He's never been a partner, you know.

We vacate the trial court's ruling that wife's interest in Pioneer Properties is marital. On remand, the trial court is directed to consider and make specific findings regarding the value of the asset and whether: (1) the interest was a separate gift to wife, (2) husband made a substantial contribution to the preservation and appreciation of the asset, and (3) the doctrines of commingling and/or transmutation apply.

**B.**

Husband argues that the trial court erred in classifying the George Smith Road property as wife's separate property. Both parties testified that husband executed a quitclaim deed to wife in order to obtain financing to build on the property. At the end of the first hearing, the trial court orally stated, "the intent of the parties for the last twenty-nine years is very clear. It was her property. I mean, he said that." The parties lived together at the George Smith Road residence for several years. Thereafter, they moved to another house and rented the property. Wife testified that she considered it to be her separate property. Husband testified that "it has always been her impression that it was her house solely," but he held a contrary view. He stated as follows, in pertinent part:

> Q. Did you make any contributions to the house on George Smith Road?
>
> A. While we were living in the home, I did all of the maintenance as far as things that needed to be done. Mowing the yard, weedeating, taking care of things. And I did contribute to cooking meals and cleaning the house.
>
> Q. Did you contribute to making any of the payments?
>
> A. It came out of our joint account and I've always worked. And that's where all of my income has went is into that checking account.

\*     \*     \*

Q. At the point that you were living in the George Smith home as a marital home, you obviously felt like that was your home?

A. Obviously.

Q. . . . That it was your property. Was that your opinion?

A. Right.

Q. At the time you were making payments on it. Correct?

A. Correct.

Q. Did you even think about the quit claim deed later down the road? When did this quit claim deed occur to you or come to your recall?

A. Well, from time to time [wife] would throw it in my face that that was her house.

Q. Okay.

A. So I can't say that I was not aware that I had signed the quit claim deed.

Q. Were you paying the taxes on it out of the marital funds just like everything else?

A. Yes.

Q. And insurance?

A. Yes.

*    *    *

-12-

Q. And by virtue of you staying there and for the years that you provided maintenance and payments, is it your position that this is marital property?

A. And based on from the time that we both moved out of the house and made it a rental.

Wife admitted that husband did maintenance work on the George Smith Road property, that payments on the loan and other maintenance expenses were made from the parties' joint checking account, and that the rent payments they received were all deposited into the joint marital account.

Because the property was acquired during the marriage, the statutory presumption is, again, that it is marital property. The trial court did not make a finding regarding whether the quitclaim deed executed by husband was a gift intended to render the property wife's separate asset, or whether it was intended for another purpose such as to satisfy the lender's demand in order to obtain financing. Husband argues that even if the property became separate because of the quitclaim deed, it was transmuted to marital property by the parties' course of conduct in the decades thereafter. This Court has analyzed such a claim in divorce cases as follows:

In determining whether a home previously owned separately by one spouse has become marital property, this Court bears in mind the following:

(1) the use of the property as a marital residence; (2) the ongoing maintenance and management of the property by both parties; (3) placing the title to the property in joint ownership; and (4) using the credit of the non-owner spouse to improve the property. Accordingly, our court has classified separately owned real property as marital property when the parties agreed that it should be owned jointly even though the title was never changed, or when the spouse owning the separate property conceded that he or she intended that the separate property would be converted to marital property.

*Carter v. Browne*, No. W2018-00429-COA-R3-CV, 2019 WL 424201, at \*10 (Tenn. Ct. App., filed Feb. 4, 2019) (quoting **Hayes v. Hayes**, No. W2010-02015-COA-R3-CV, 2012 WL 4936282, at \*12 (Tenn. Ct. App., filed Oct. 18, 2012)); *see also **Cox***, 2017 WL 6517596, at \*4 ("An asset separately owned by one spouse will be classified as marital

property if the parties themselves treated it as marital property.") (quoting *Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407, at \*5 (Tenn. Ct. App., filed Sept. 1, 2006)).

In the present case, although husband has identified some factors weighing in favor of a finding of transmutation, he did not show that "the parties agreed that it should be owned jointly," *id.*, nor did wife concede that she ever intended that the property would be converted to marital property. Husband's testimony confirmed her assertion that she always considered it separate and had no intention that it become marital. Consequently, we decline to disturb the trial court's holding that the George Smith Road property was wife's separate property.

## C.

Wife argues that the trial court failed to comply with Tenn. R. Civ. P. 52.01, which requires that "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." A decade has passed since this rule was amended to require trial courts to make such findings and conclusions irrespective of whether a party specifically requests them. *See Turman v. Turman*, No. W2014-01297-COA-R3-CV, 2015 WL 17744278, at \*4 (Tenn. Ct. App., filed Apr. 14, 2015). Over the last ten years, this Court has addressed the identical issue raised by wife a remarkable number of times. *See Mangum*, 2019 WL 1787328, at \*17; *Trezevant*, 568 S.W.3d at 621-22; *Swafford*, 2018 WL 1410900, at \*6; *Cox*, 2017 WL 6517596, at \*5-6; *Smith v. Smith*, No. E2017-00515-COA-R3-CV, 2017 WL 6467153, at \*5 (Tenn. Ct. App., filed Dec. 18, 2017); *Brainerd v. Brainerd*, No. M2015-00362-COA-R3-CV, 2016 WL 6996365, at \*5 (Tenn. Ct. App., filed Nov. 30, 2016); *Kirby v. Kirby*, No. M2015-01408-COA-R3-CV, 2016 WL 4045035, at \*5-6 (Tenn. Ct. App., filed July 25, 2016); *Turman*, 2015 WL 1744278, at \*4-5; *Babcock v. Babcock*, No. E2014-01670-COA-R3-CV, 2015 WL 1059003, at \*6 (Tenn. Ct. App., filed Mar. 9, 2015); *Irvin v. Irvin*, No. M2010-01962-COA-R3-CV, 2011 WL 2436507, at \*11 (Tenn. Ct. App., filed June 15, 2011). All ten of these opinions were decided within the specific context of addressing the classification, valuation, and division of a marital estate.

In *Trezevant*, 568 S.W.3d at 621-22, we reiterated the following oft-stated observations:

> "In bench trials, trial courts must make findings of fact and conclusions of law to support their rulings." *Hardin v. Hardin*, No. W2012-00273-COA-R3-CV, 2012 WL

6727533, at *3 (Tenn. Ct. App. Dec. 27, 2012). Tennessee Rule of Civil Procedure 52.01 states, in pertinent part:

> In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment.

"Simply stating the trial court's decision, without more, does not fulfill this mandate." ***Barnes v. Barnes***, No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at *8 (Tenn. Ct. App. Oct. 24, 2012). "[T]he General Assembly's decision to require findings of fact and conclusions of law is 'not a mere technicality.' " ***Hardin***, 2012 WL 6727533, at *3 (quoting ***In re K.H.***, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009) ). Such findings and conclusions "facilitate appellate review by affording a reviewing court a clear understanding of the basis of a trial court's decision." ***Lovlace v. Copley***, 418 S.W.3d 1, 34 (Tenn. 2013). In the absence of sufficient findings and conclusions, " 'this court is left to wonder on what basis the court reached its ultimate decision.' " ***In re K.H.***, 2009 WL 1362314, at *8 (quoting ***In re M.E.W.***, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004) ).

> There is no bright-line test by which to assess the sufficiency of factual findings, but "the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue."

***Lovlace***, 418 S.W.3d at 35 (quoting 9C *Federal Practice & Procedure* § 2579, at 328).

In making an equitable division of property, the trial court must consider the following statutory factors:

> (1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (Supp. 2016).

In the present case, as already stated, the trial court did not make a finding regarding the value of any of the assets, including those assigned to wife as her separate property, and those upon which the parties disagreed as to their value. The trial court's order does not refer to Tenn. Code Ann. § 36-4-121(c), or make a finding regarding any of the factors prescribed therein. In **Trezevant**, we stated the following with regard to potential appellate remedies of such a situation:

> Appellate courts have two options when a trial court's factual findings fail to satisfy the Rule 52.01 requirement. One is to conduct an independent analysis of the record and "determine where the preponderance of the evidence lies." **Lovlace**, 418 S.W.3d at 36; *See* **Town of Middleton v. City of Bolivar**, No. W2011-01592-COA-R3-CV, 2012 WL 2865960, at *26 (Tenn. Ct. App. July 13, 2012) (noting that "when faced with a trial court's failure to make specific findings, the appellate courts may 'soldier on' when the case involves a clear legal issue, or when the court's decision is readily ascertainable.") (citations omitted). The alternative is to vacate the decision and remand the case to the trial court with instructions to issue sufficient findings of fact and conclusions of law.

568 S.W.3d at 623. "Generally, the appropriate remedy when a trial court fails to make appropriate findings of fact and conclusions of law is to vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law." **Swafford**, 2018 WL 1410900, at *6 (quoting **Babcock**, 2015 WL 1059003, at *6)). Indeed, this Court, in all ten similar cases cited above, determined that a remand was the appropriate remedy. We reach the same conclusion here.

## V.

The trial court's classification of wife's partnership interest in Pioneer Properties as marital property is vacated, with instructions to the trial court to make specific findings of fact consistent with the analysis herein. We express no opinion as to the ultimate issue of whether the asset is properly classified as separate or marital. The trial court's judgment finding the George Smith Road property to be wife's separate asset is affirmed. The trial court's division of marital property is vacated, and the case remanded for

appropriate findings of fact and conclusions of law pursuant to Tenn. R. Civ. P. 52.01. Costs on appeal are assessed equally to the appellant, Carolyn Diane Long, and the appellee, Steven Lawrence Long.


_____
CHARLES D. SUSANO, JR., JUDGE