IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 1, 2019

**SARA KELLEY POOLE v. RONALD ELLIS KINSLOW**

**Appeal from the Circuit Court for Wilson County**
**No. 2017-DC-28     Clara W. Byrd, Judge**

_____

**No. M2018-00324-COA-R3-CV**

_____

In this divorce action, the trial court equitably divided the marital estate, adopted a permanent parenting plan for the parties' minor child, and set child support. On appeal, the husband challenges the allocation of marital debt, the denial of his request for equal parenting time, and the calculation of child support. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Ronald Ellis Kinslow, Springfield, Tennessee, pro se appellant.

Amanda G. Crowell, Lebanon, Tennessee, for the appellee, Sara Kelley Poole.

**OPINION**

**I.**

**A.**

On January 18, 2017, in the Circuit Court for Wilson County, Tennessee, Sara Kelley Poole ("Wife") filed for divorce from her husband of less than four years, Ronald Ellis Kinslow ("Husband"). This was Wife's first marriage and Husband's fourth. Husband filed an answer and a counter complaint for divorce.

The union produced one child, born in September 2013. During the marriage, Husband was the primary wage earner. Wife was a full-time caregiver for the parties' child.

Wife moved for temporary support and division of marital expenses. The court established a temporary parenting plan that named Wife primary residential parent and awarded Husband parenting time every other weekend. The court also ordered Husband to make weekly support payments for his wife and child.

In late June, Wife, fearing Husband intended to terminate his employment, asked the court for a restraining order. On July 10, 2017, the court issued an order restraining Husband from voluntarily changing his employment during the pendency of the divorce.

A month later, Husband asked the court for permission to accept an employment offer from Eclipse Services, LLC. In a separate motion, Husband requested additional parenting time "due to new living arrangements and [a] schedule change." After a hearing on both motions, the court denied Husband's request to change jobs because the offered compensation was less than his current pay.[1] But the court granted his request for additional parenting time and awarded him residential parenting time every other Wednesday evening.

B.

Much of the proof at trial focused on the parties' finances. While Husband and Wife had no significant marital assets, they had considerable debt.

Before the marriage, Wife was debt-free and employed as an assistant property manager for an apartment complex. Husband worked mainly in construction or maintenance. He described his employment history as "excellent." But unlike Wife, Husband entered the marriage with a considerable amount of debt.

Husband has four children from previous marriages. And he was obligated to pay child support for his two children from his second marriage. As of 2013, Husband owed $670 in monthly child support and an additional $458 per month on a child support arrearage of $45,888. Husband claimed that the arrearage was a mistake. According to Husband, his ex-wife agreed with him and was returning part of his child support payment each month.

---

[1] The court's order specified "that [Husband] shall change his employment at this time." But the parties stipulated at trial that this was a typographical error.

2

Husband was also saddled with a federal tax lien of $946,668.  He disputed the amount owed to the IRS, but agreed that he had failed to file an income tax return for 2007.  At trial, Husband maintained that his tax attorney had recently filed a return for 2007 and was working to resolve the IRS's questions about his 2006 return.  But the tax lien remained outstanding; no payments had been made.

After their child's birth, Wife stopped working outside the home, and the couple started a remodeling business, R&S Restoration and Remodeling.  Husband was in charge of the business operations.  Although R&S was organized as a sole proprietorship in Wife's name, her involvement was minimal.  According to Wife, Husband chose to structure the business this way to shield the income from the IRS.  The business was ultimately unsuccessful.  And R&S officially closed in late 2014.

Husband then accepted full-time employment with Central Transport.  He "did everything from structural building maintenance to HVAC [and] electrical."  He was paid $24 an hour plus a per diem for travel.  Generally, he was on the road for ten-day intervals and then home for four.  In 2015 and 2016, he earned $74,933 and $78,521 respectively, his highest income during the marriage.

Despite Husband's steady paycheck, the couple's financial woes continued.  In May 2015, the Tennessee Department of Human Services seized the balance of their joint checking account in partial satisfaction of Husband's child support arrearage.  And the following January, the Tennessee Department of Commerce and Insurance assessed R&S with a civil penalty for engaging in contracting work without a license.  *See* Tenn. Code Ann. §§ 62-6-103(a)(1), -120(e)(1)(A) (2019).  The civil penalty plus costs totaled $12,500.  Husband arranged for a payment plan, but at the time of trial, he had only paid a small portion of this debt.

In March 2016, Husband began to deposit his paychecks into his personal checking account rather than the joint account that Wife used to pay the household expenses.  At trial, Wife compared the deposits into the joint account for the year up to and including March 2016 with the following year.  According to her calculations, Husband deposited over $45,000 in the joint account between April 2015 and March 2016.  But the following year, his deposits only totaled $17,469.

Husband claimed he was merely protecting the family income from Wife's overspending.  Wife disputed this.  She demonstrated that, between February 2016 and March 2017, Husband deposited over $73,000 into his personal account but only contributed $20,925 toward the support of Wife and their child.  During this same time period, he used $37,780 to pay his own expenses.  And he withdrew over $14,000 in cash. He claimed he used the cash to pay bills, but he could not produce any receipts or other supporting documentation.  And he conceded that he frequented casinos when traveling.

According to Wife, after Husband began withholding income, she used her personal credit cards to purchase necessary items for the family. And in August 2016, she started babysitting to generate more income. By the time of trial, Wife was earning approximately $1,600 per month providing in-home childcare.

## C.

The testimony at trial also touched on the parties' future plans. Eventually, Wife intended to return to property management. But until their child was old enough for school, she planned to continue providing childcare. Her monthly expenses far eclipsed her income from childcare. And she had no savings, retirement fund, or separate property.

Husband maintained that his current financial situation was equally dire. He claimed that the numerous court hearings during the divorce had cost him two jobs. Central Transport had fired him for taking too much time off, and he lost his next job, as a technician for Eclipse Services, shortly before trial because "they were tired of the drama." Left with no other option, he had started another remodeling business.

Husband was confident that he could attract customers to his fledgling business based on his positive reviews as a technician for Eclipse Services. He estimated his potential earnings at $4,160 per month. But he conceded that he needed a contractor's license for the business to succeed. And he was still not licensed.

The court was unimpressed:

THE COURT: I'm confused, Mr. Kinslow. You came before me twice wanting to quit your job and now you're complaining that the court appearances caused you to lose your job. You wouldn't have been here if you hadn't asked for permission to quit your job. You'd have been at work.

THE WITNESS: No, I didn't ask for permission to quit my job.

THE COURT: Yes, you did. I denied it twice.

Documents from Husband's former employers contradicted his story. While the court's initial restraining order was in effect, Husband had agreed to accept employment as lead HVAC and electrical technician with Eclipse Services for a net weekly compensation of $1,300. He requested a job offer letter from Eclipse Services "showing 40 hours a week at $23.00 so that he could provide proof of future employment that met a

4

certain amount of pay in order to quit his other job."[2]  According to his employment files, the day before he filed his motion to change employment, he voluntarily terminated his position at Central Transport and began work at Eclipse Services.

Husband lost the job at Eclipse Services shortly before trial.  He gave various reasons for losing his second job, most of which were contradicted by other evidence in the record.  Still, he conceded that he knew he was eligible for rehire at Central Transport.  But rather than return to his previous employment, he chose to start his own business so that he could be closer to the parties' child.

Husband agreed that his years at Central Transport were his most financially successful.  And since he left that job, he had fallen further behind on his child support.  Without the wage garnishment that had been in effect at Central Transport, he just paid "what [he] could."

D.

Before trial, the parties had agreed that Wife should remain the primary residential parent.  But they disagreed sharply on the appropriate residential parenting schedule.  Husband wanted equal parenting time.  At the time of trial, he lived in Greenbrier, Tennessee, approximately an hour away from Wife.  But he planned to move closer when his lease expired.

Wife contended that equal parenting time would not be workable due to the distance between the parties and their inability to communicate.  She advocated for a continuation of the temporary parenting plan because the child was accustomed to it.

In a final order, the trial court declared the parties divorced and equitably divided the marital estate.  In so doing, the court allocated the majority of the marital debt to Husband.  The court also awarded Wife her attorney's fees as alimony in solido.  The permanent parenting plan adopted by the court named Wife primary residential parent and granted Husband 80 days of residential parenting time.  The court ordered a residential parenting schedule that essentially mirrored Husband's work schedule at Central Transport.  Finally, the court set Husband's child support obligation at $181 per week, the same amount he was paying under the temporary parenting plan.

---

[2] Husband admitted that the job offer letter from Eclipse Services he submitted to the court did not reflect his entire compensation package.

On appeal, Husband contends that the trial court erred in its allocation of marital debt, adoption of the residential parenting schedule, and calculation of child support.[3] We review the trial court's decision under the deferential abuse of discretion standard of review. *See Luplow v. Luplow*, 450 S.W.3d 105, 110 (Tenn. Ct. App. 2014); *Maupin v. Maupin*, 420 S.W.3d 761, 770 (Tenn. Ct. App. 2013); *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005).

Our review of discretionary decisions is limited. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009). We do not "second-guess the court below" or "substitute [our] discretion for the lower court's." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). In reviewing discretionary decisions, we consider: "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions." *Id.* We "review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d)." *Id.* at 525. Our review of the lower court's legal determinations is de novo with no presumption of correctness. *Id.*

In weighing the preponderance of the evidence, findings of fact based on witness credibility are given great weight. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). In this case, the trial court specifically found Husband was not credible. We will not re-evaluate a trial judge's assessment of witness credibility on appeal absent clear and convincing evidence to the contrary. *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

A. ALLOCATION OF MARITAL DEBT

Husband charges that the court's allocation of marital debt was inequitable. The allocation of marital debt is part of the division of the marital estate. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002). Trial courts are entrusted with the task of equitably dividing the marital estate after considering the relevant statutory factors in light of the unique facts of the case. *See* Tenn. Code Ann. § 36-4-121(c) (2017); *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). The trial court's division is afforded great weight on appeal. *Batson*, 769 S.W.2d at 859. It is not our role to tweak

---

[3] Although the court's award of attorney's fees is included in Husband's statement of the issues on appeal, his brief contains no argument on this issue. So we deem this issue waived. *See Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012) ("An issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements of Tenn. R. App. P. 27(a)(7).").

the court's division. *Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007). We will defer to the trial court's decision "unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence." *Altman v. Altman*, 181 S.W.3d 676, 683 (Tenn. Ct. App. 2005).

"[T]he same rules of fairness and equity which apply to the equitable division of marital assets apply to the division of marital debts." *Woods v. Woods*, No. M2002-01736-COA-R3-CV, 2005 WL 1651787, at *6 (Tenn. Ct. App. July 12, 2005). "'[M]arital debts' are all debts incurred by either or both spouses during the course of the marriage up to the date of the final divorce hearing." *Alford v. Alford*, 120 S.W.3d 810, 813 (Tenn. 2003). To achieve the "fairest possible" allocation, trial courts consider four factors: "(1) the debt's purpose; (2) which party incurred the debt; (3) which party benefitted from incurring the debt; and (4) which party is best able to repay the debt." *Id.* at 814.

According to Husband, Wife should be equally responsible for the civil penalty assessment against R&S because she derived some benefit from the sole proprietorship. But the evidence does not preponderate against the trial court's finding that Husband was in charge of the remodeling business. He accepted the jobs and supervised or performed all the remodeling work. This debt was incurred as a direct result of Husband's performance of contracting work without the required license. And Husband, having the greater earning capacity, is in the best position to repay this debt.

Husband also maintains that Wife should be solely responsible for her credit card debt. At the time of trial, Wife had outstanding balances on seven credit cards. The trial court made Wife responsible for two of those cards and directed Husband to pay the outstanding balances on the remaining five. Contrary to Husband's claims, this was marital debt. *See id.* at 813. Wife incurred this debt during the marriage. And although Husband contends that Wife's purchases were unnecessary, Wife testified to the contrary. The purpose of this debt was to purchase items for the family.[4] The family benefitted from these purchases. And Husband has the greater ability to repay this debt.

"In the final analysis, the justness of the allocation of the marital debt, like the division of marital property, depends on the final results." *Woods*, 2005 WL 1651787 at *6. In cases with few marital assets, our courts often award the economically disadvantaged spouse a smaller portion of marital debt. *See id.* (citing *Robertson*, 76 S.W.3d at 341). The trial court found that "due to the marriage, [Wife] is not as successful as she was prior to the marriage." She has no separate property, no savings, and no retirement plan. Her only source of income is from providing in-home childcare. Unlike Wife, Husband has a small retirement plan. And his earning capacity is

---

[4] Husband also asserts that Wife paid part of her attorney's fees with one of these cards. But the trial court awarded Husband a credit for that amount.

significantly greater than Wife's. Under the circumstances presented here, we cannot say the trial court's allocation was in error.

## B. EQUAL PARENTING TIME

The paramount concern when establishing a permanent parenting plan is the best interest of the child. *Maupin*, 420 S.W.3d at 770. Courts should fashion a parenting schedule "consistent with the child's developmental level and the family's social and economic circumstances, which encourage[s] each parent to maintain a loving, stable, and nurturing relationship with the child." Tenn. Code Ann. § 36-6-404(b) (2017). Unless certain limiting factors are dispositive, the court's decision should be based on a non-exclusive list of statutory factors in Tennessee Code Annotated § 36-6-106(a). *Id.*

The determination of a child's best interest presents a question of fact. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013); *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). Thus, we "presume that a trial court's factual findings on [best interest] are correct." *Armbrister*, 414 S.W.3d at 693. And we will not overturn the trial court's best interest findings unless the evidence preponderates against them. *Id.*

Husband complains that the trial court awarded him only 80 days of parenting time each year. He argues that this residential schedule does not satisfy the statutory directive to order a custody arrangement that maximizes both parents' participation in the child's life. *See* Tenn. Code Ann. § 36-6-106(a) (2017). But the statute does not mandate equal parenting. Rather, it directs the court to maximize both parents' participation in the child's life "consistent with the [statutory best interest] factors . . . , the location of the residences of the parents, the child's need for stability and all other relevant factors." *Id.*

Here, the trial court rejected Husband's request for equal parenting time based on the distance between the parents' homes and their child's need for stability. Husband lived over an hour away from Wife and, at the time of trial, had almost nine months remaining on his lease. The court emphasized the importance of continuity and stability in this case as the parties' child was only four years old. While both parents love their child, Wife performed the majority of parenting responsibilities during the marriage. For most of their child's life, Husband had only been present Thursday through Sunday every other week. Husband had the opportunity to return to Central Transport. With that in mind, the court determined that it would be in the child's best interest to fashion a residential parenting schedule consistent with Husband's previous work schedule.

Based on our review, we cannot say that the court abused its discretion in fashioning this residential schedule. The best interest analysis is a "particularly fact-intensive process." *McEvoy v. Brewer*, No. M2001-02054-COA-R3-CV, 2003 WL 22794521, at *5 (Tenn. Ct. App. Nov. 25, 2003). Our role is not to "tweak a visitation

order in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). The court applied the correct law, the evidence does not preponderate against its factual findings, and its decision is within the range of acceptable alternative dispositions. *See Lee Med.*, 312 S.W.3d at 524.

## C. HUSBAND'S INCOME FOR CHILD SUPPORT PURPOSES

Husband argues that the trial court based its child support calculation on erroneous income figures. The trial court calculated child support based on Husband's earning capacity rather than his actual gross income. "The fairness of a child support award depends on an accurate determination of both parents' gross income or ability to support." *Massey v. Casals*, 315 S.W.3d 788, 795 (Tenn. Ct. App. 2009). Under the Tennessee Child Support Guidelines, a court may set child support based on a parent's income potential or earning capacity if the court finds that a parent is willfully or voluntarily underemployed. Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2) (2008). "This is based on the premise that parents may not avoid their financial responsibility to their children by unreasonably failing to exercise their earning capacity." *Massey*, 315 S.W.3d at 795.

The trial court has the difficult task of "ascertain[ing] the reasons for the parent's occupational choices, and . . . assess[ing] the reasonableness of these choices in light of the parent's obligation to support his or her child(ren) and . . . determin[ing] whether such choices benefit the children." Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(ii). Husband claims he was not responsible for his employment situation at the time of trial. But the trial court questioned his honesty. And the evidence in this record supports a finding of willful or voluntary underemployment. Husband quit his position at Central Transport. And after losing his subsequent job, he chose to start his own business instead of returning to Central Transport. At the time of trial, Husband's new business had yet to generate any income. And his business plan was questionable. Husband still lacked a contractor's license, which he conceded was vital to the success of his business. Central Transport was Husband's most lucrative employment in recent years. On this record, we have little difficulty agreeing that Husband's decision to quit his job at Central Transport and his subsequent refusal to exercise the option to return was unreasonable in light of his obligation to support his child.

The evidence also does not preponderate against the court's finding that Husband has the capacity to earn $76,000 based on his income history. The court considered his education and previous work experience. *See Brooks v. Brooks*, 992 S.W.2d 403, 407 (Tenn. 1999) (holding that previous earnings were the best evidence of earning capacity); *Ralston v. Ralston*, No. 01A01-9804-CV-00222, 1999 WL 562719, at *6 (Tenn. Ct. App. Aug. 3, 1999) (noting that the obligor's previous income is an "accurate measure of potential income" especially "when an obligor parent has voluntarily discontinued his prior employment or other income-producing activity, because, without the conscious

decision to cease the activity, the actual income would have continued"). And Husband admitted that he had the option to return to his previous employment.

### D. ATTORNEY'S FEES ON APPEAL

Wife requests an award of her attorney's fees on appeal. By statute, courts have discretion to award a spouse designated as the primary residential parent "reasonable attorney's fees incurred . . . in regard to any suit or action concerning the adjudication of the custody . . . of any child." Tenn. Code Ann. § 36-5-103(c) (2017).[5] We have discretion to award attorney's fees incurred on appeal. *Pippin v. Pippin*, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008). In exercising our discretion, we "consider, among other factors, the ability of the requesting party to pay his or her own attorney's fees, the requesting party's success on appeal, and whether the requesting party has been acting in good faith." *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004).

In light of these factors, we exercise our discretion to award Wife her attorney's fees on appeal. Wife lacks sufficient resources to pay her attorney's fees, and she prevailed on appeal.

### III.

The trial court did not abuse its discretion in its allocation of the marital debt. The court also did not abuse its discretion in fashioning the residential parenting schedule or calculating child support based on Husband's earning capacity. So we affirm the judgment. We remand this case for a determination of a reasonable amount of attorney's fees to be awarded and for further proceedings as may be necessary and consistent with this opinion.

_____
W. NEAL MCBRAYER, JUDGE

---

[5] This statutory provision was amended, effective July 1, 2018. *See* 2018 Tenn. Pub. Acts 1186 (ch. 905). The pre-amendment version is applicable here.