IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 10, 2022 Session

**GEHLEN LIEBETREU v. SANDRA LIEBETREU**

**Appeal from the Circuit Court for Montgomery County**
**No. CC-19-CV-2412      Ross H. Hicks, Judge**

_____

**No. M2021-00623-COA-R3-CV**
_____

Father appeals the trial court's award of unsupervised parenting time and an award of attorney's fees to Mother. Specifically, Father argues that Mother is a high risk for abduction of the parties' children and that the trial court abused its discretion in allowing her unsupervised visitation. We affirm the trial court's award of unsupervised parenting time to Mother, but we reverse the trial court's award of attorney's fees to her.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part, Reversed in Part, and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which KENNY ARMSTRONG and CARMA DENNIS MCGEE, JJ., joined.

Gregory D. Smith, Brenton H. Lankford, and Ashley Goins Alderson, Nashville, Tennessee, for the appellant, Gehlen Liebetreu.

Gregory D. Smith,[1] Clarksville, Tennessee, for the appellee, Sandra Liebetreu.

**OPINION**

**BACKGROUND AND PROCEDURAL HISTORY**

Gehlen Liebetreu ("Father") and Sandra Liebetreu ("Mother") were married on March 14, 2014. At the time, Father was serving in the United States Armed Forces in Germany, and Mother was a German national. The parties later moved to the United States on October 16, 2015, where Father was initially stationed in Ohio and where two children were born of the marriage. The family subsequently relocated to Tennessee in March of 2019, where they resided until the breakdown of the parties' marriage.

_____

[1] Counsel for the Appellee and the Appellant, while not the same person, share the same name.

On May 7, 2019, Mother took the parties' minor children to Germany to visit family. It was agreed that Mother would return to the United States on August 17, 2019. Although Father did not accompany Mother and the children during this trip, as he was fulfilling military duties in Arizona at the time, he traveled to Germany on August 14, 2019 to assist Mother and the children in their return to the United States. Mother, however, informed Father that she would not be returning to the United States and that she would not allow the children to leave Germany. Thereafter, Father initiated legal proceedings under the Hague Convention[2] in Germany to secure the children's return to the United States. The Hague Convention governing court in Germany subsequently determined that Mother had unlawfully abducted and retained the parties' minor children in Germany and ordered her to return them to Father. Mother failed to comply with this order and appealed the decision. However, after losing her appeal, Mother ultimately relinquished custody of the children to Father.

Father filed a complaint for absolute divorce in the Circuit Court for Montgomery County, Tennessee ("trial court") on November 25, 2019, during the course of the custody battle in Germany. In his complaint, Father asked that he be named the primary residential parent of the children and further requested that the court implement abduction prevention measures to prevent Mother from wrongfully removing the children to Germany or wrongfully retaining the children in Germany. Subsequent to a trial, the trial court entered a "Memorandum Opinion" on March 3, 2021, and, later, a final decree of divorce on April 23, 2021. In the final decree, the trial court designated Father as the primary residential parent[3] of the parties' children and found that Mother had unlawfully abducted and retained the children in Germany. However, the trial court awarded Mother two months of unsupervised visitation with the children in Germany during the summer and ordered Father to pay the return costs of the visitation. Moreover, it conditioned Mother's visitation with the children upon her "posting a bond or other security in the amount of $50,000.00 as a financial deterrent to abduction, the proceeds of which may be used to pay for the reasonable expenses of recovering the children, including reasonable attorney's fees and costs if there is in fact another abduction of the children by Mother." The trial court further ordered Mother to complete education concerning the potential harmful effects of abduction on the children, to surrender the children's German passports to Father, and to never apply for replacement passports. Additionally, the trial court concluded that Mother was to bear the costs of Father's attorney's fees and expenses incurred in prosecuting his

---

[2] The Hague Convention on the Civil Aspects of International Child Abduction "is an international treaty that has become a powerful tool for return of children wrongfully removed from their habitual place of residence." Marlene Moses & Jessica Uitto, *The Hague Convention of Oct. 25, 1980, The Civil Aspects of International Child Abduction*, 46 Tenn. B.J. 28, 33 (May 2010). The Hague Convention is designed to obtain "the prompt return of children who have been wrongfully removed or retained" in any of the states under the treaty. International Child Abduction Treaties Act § 2 et seq., 22 U.S.C. § 90001(a)(4) (2012).

[3] There was a parenting plan attached to the trial court's final decree of divorce.

complaint for divorce in the sum of $21,972.00 and was also determined to be liable for retroactive child support in the amount of $4,536.00, from April 2020, when the children were returned to Father from Germany.

On May 5, 2021, Mother filed a "Motion to Alter or Amend Final Decree of Divorce," asking the trial court to strike the requirement that she post a bond before visitation with the children or, in the alternative, to reduce the bond amount. Mother further requested that the trial court reduce the amount of attorney's fees owed to Father because, according to Mother, she could barely afford the child support award. In an order entered on May 24, 2021, the trial court denied Mother's motion in its entirety.

Father took steps to prevent Mother from exercising her unsupervised visitation with the parties' minor children, contending that there was a risk of harm to the children due to Mother's previous actions. In pursuit of this, Father filed a motion with this Court pursuant to Rule 7 of the Tennessee Rules of Appellate Procedure,[4] requesting a stay pending appeal of the trial court's judgment allowing Mother to take the children to Germany. A temporary stay was entered by this Court pending Mother's response to the motion, but this Court ultimately denied the motion on June 10, 2021. In addition to denying the motion, this Court ordered that Mother should be reimbursed for her travel expenses resulting from the temporary stay. The case was remanded to the trial court to determine the source and amount of reimbursement. The trial court later awarded Mother her travel expenses which were determined to be in the amount of $14,540.20. This amount included an award of attorney's fees in the amount of $4,500.00. The trial court further ordered that the award to Mother should be deducted from the amount of attorney's fees she owed to Father pursuant to the final decree. Father thereafter filed a "Notice of Appeal."

## ISSUES PRESENTED

Father sets forth three separate issues for our review on appeal, restated as follows:

1. Whether the trial court abused its discretion in awarding Mother unsupervised parenting time with the parties' children in Germany during the summer months.
2. Whether the trial court abused its discretion in awarding Mother $4,500.00 in attorney's fees in defending Father's Rule 7 motion.

---

[4] Rule 7(a) of the Tennessee Rules of Appellate Procedure provides, in pertinent part:

> Any party may obtain review of an order entered pursuant to rule 62 of the Tennessee Rules of Civil Procedure by a trial court from which an appeal lies to the Supreme Court or the Court of Appeals granting, denying, setting or altering the conditions of a stay of execution pending appeal, or granting, denying, setting or altering the conditions of additional or modified relief pending appeal.

Tenn. R. App. P. 7(a).

3. Whether Father is entitled to attorney's fees and costs associated with this appeal.

## DISCUSSION

*Whether the Trial Court Abused Its Discretion in Awarding Mother Unsupervised Visitation in Germany*

It is generally accepted that "the details of custody and visitation with children are peculiarly within the broad discretion of the trial judge," *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988) (quoting *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. App. 1973)), and that a trial judge's decision "will not ordinarily be reversed absent some abuse of that discretion." *Id.* In reviewing these decisions, "the welfare of the child has always been the paramount consideration." *Id.* (quoting *Luke v. Luke*, 651 S.W.2d 219, 221 (Tenn. 1983)). Moreover, "the right of the noncustodial parent to reasonable visitation is clearly favored." *Id.* (citing *Weaver v. Weaver*, 261 S.W.2d 145, 148 (1953)). Nevertheless, this favored right to visitation "may be limited, or eliminated, if there is definite evidence that to permit . . . the right would jeopardize the child, in either a physical or moral sense." *Id.* (quoting *Weaver*, 261 S.W.2d at 148).

In reviewing a trial court's decision under the abuse of discretion standard, this Court will uphold the decision "so long as reasonable minds can disagree as to the propriety of the decision made." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)). A trial court will be said to have abused its discretion "only when it 'applie[s] an incorrect legal standard or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Id.* (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). Under this standard of review, an appellate court is not permitted to substitute its judgment for that of the trial court. *Id.* (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)).

In its final decree of divorce, the trial court awarded Mother unsupervised visitation with the parties' children each summer in Germany. However, due to her past abduction of the children, the trial court found it appropriate to implement an "Abduction Prevention Order" as contemplated in Tennessee Code Annotated section 36-6-608.[5] Specifically, the

---

[5] Tennessee Code Annotated section 36-6-608(d) provides that, in an abduction prevention order, such as the one here, the trial court may impose certain conditions upon a parent's custody or visitation that:

> (1) Limit visitation or require that visitation with the child by the respondent be supervised until the court finds that supervision is no longer necessary and order the respondent to pay the costs of supervision;
> (2) Require the respondent to post a bond or provide other security in an amount sufficient to serve as a financial deterrent to abduction, the proceeds of which may be used

- 4 -

trial court conditioned Mother's visitation upon her posting a bond or other security in the amount of $50,000.00.[6] Father contends on appeal that the trial court abused its discretion when it awarded Mother unsupervised visitation with the parties' children in Germany for two months during the summer. Father predicates this contention on two primary bases. First, he contends that Mother poses a high risk of abduction and such high risk goes against the trial court's award of unsupervised parenting time. Second, Father asserts that the preventative measures placed on Mother, including the $50,000.00 bond requirement, are insufficient to deter Mother from abducting the children again. Respectfully, we disagree.

As we noted earlier, this Court will reverse a decision of the trial court concerning visitation only when it applies an incorrect legal standard, reaches an illogical or unreasonable decision, or bases its decision on a clearly erroneous assessment of the evidence. *Gooding v. Gooding*, 477 S.W.3d 774, 781 (Tenn. Ct. App. 2015) (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524-25 (Tenn. 2010)). In evaluating both the trial court's imposition of certain requirements on Mother's visitation and the award of unsupervised visitation in general, we cannot say that the court committed an abuse of discretion. In his brief, Father argues that the $50,000.00 bond imposed on Mother is not a sufficient deterrent to prevent a subsequent abduction. We are somewhat perplexed by Father's contention in this regard considering his position in the trial court. In response to Mother's motion to alter or amend wherein she requested that the bond requirement be lifted or, in the alternative, lowered, Father asserted that her bond was "**completely appropriate** and consistent with Tennessee Code annotated section 36-6-601, et seq[.], The Uniform Child Abduction Act, based upon the facts and circumstances of the case including the unlawful abduction and retention by [Mother] of the parties' minor children." (emphasis added). Not only is Father's attempt to now change his position on appeal not well-taken, but we also conclude that the $50,000.00 bond requirement was appropriate under section 36-6-608.

Father also opines that the severity of Mother's actions renders her such a high risk for abduction that she should not be afforded unsupervised visitation. However, we are unconvinced, as we find nothing in the record supporting Father's contentions in this regard. As noted several times throughout this Opinion, trial judges have wide discretion in rendering custody determinations. Despite Mother's previous actions, the trial court

---

to pay for the reasonable expenses of recovery of the child, including reasonable attorney's fees and costs if there is an abduction; and
    (3) Require the respondent to obtain education on the potentially harmful effects to the child from abduction.

Tenn. Code Ann. § 36-6-608(d).

[6] Additionally, the trial court ordered Mother "to obtain and complete education on the potential harmful effects of abduction on the children" and to surrender to Father the children's German passports. She was also prohibited from applying for new or replacement passports or visas.

imposed certain restrictions as contemplated by section 36-6-608(d), as well as others, in order to deter any future abductions. We find nothing in the statute wherein the trial court was required to completely restrict *any* international visitation, which appears to be Father's goal. Likewise, we find nothing in the facts of this case which would have dictated that the trial court completely deny any unsupervised visitation. Rather, it was well within the court's discretion to allow Mother visitation with the children upon the completion of certain conditions. Accordingly, we affirm the trial court in this regard.

### *Whether the Trial Court Erred in Awarding Mother Attorney's Fees Associated with Defending Father's Rule 7 Motion*

In an order entered June 10, 2021, this Court ordered that Mother was to be reimbursed for "any additional, unavoidable travel expenses caused by the June 7, 2021 temporary stay." We directed the trial court to determine the amount and source of such expenses, if any. In a filing titled "Expenses Filing," Mother listed numerous expenses she incurred in connection with her travel to the United States as well as attorney's fees. In an order dated June 21, 2021, the trial court determined that Mother "expended $14,540.20 in unavoidable travel expenses caused by the temporary stay." The trial court included $4,500.00 in attorney's fees in this calculation and determined that these amounts were reasonable and necessary and were to be offset against the funds previously deposited by Mother with the trial court clerk to pay Father's attorney's fees as ordered in the final decree. On appeal, Father contends that the trial court erred in including an award of $4,500.00 in attorney's fees to Mother in light of this Court's order. Specifically, he argues that this Court was clear in that Mother was to be reimbursed for any "additional, unavoidable travel expenses," not attorney's fees. We agree.

There is no mention or discussion in this Court's order concerning any attorney's fees incurred by Mother. This Court determined that Mother was entitled to reimbursement for her "additional, unavoidable **travel expenses**." (emphasis added). The trial court, in its order on remand from this Court, attempts to justify its award of attorney's fees by stating that, "[w]hile the appellate order does not specifically mention attorney fees, the Court concludes that the efforts of counsel for [Mother] was necessary to facilitate [Mother's] visitation due to the unavoidable need to respond to [Father's] T.R.A.P. 7 motion[.]" If this Court had intended that Mother be reimbursed for her attorney's fees, we would have included such specific language in our order. We did not. The plain text of our order directs that reimbursement is to be made for travel expenses; there is no mention of attorney's fees. Accordingly, we reverse the portion of the trial court's order reimbursing Mother for her attorney's fees in the amount of $4,500.00. The balance of the trial court's monetary judgment concerning Mother's travel expenses remains undisturbed.

### *Whether Father is Entitled to Attorney's Fees on Appeal*

Father asks that this Court award him fees and costs incurred on this appeal pursuant

to section 36-5-103(c). That statute provides:

> A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the nonprevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

Tenn. Code Ann. § 36-5-103(c). "Whether to award attorney's fees on appeal is a matter within the sole discretion of this court." *Ellis v. Ellis*, 621 S.W.3d 700, 709 (Tenn. Ct. App. 2019) (quoting *Luplow v. Luplow*, 450 S.W.3d 105, 119 (Tenn. Ct. App. 2014)). In determining whether to award such fees on appeal, "we consider the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that should be considered." *Id.* In light of the above discussion, we decline to award Father his attorney's fees on appeal.

## CONCLUSION

Based on the foregoing, we affirm the trial court's order insofar as it pertains to Mother's summer visitation with the parties' minor children and reverse its award of attorney's fees to Mother as part of her travel expenses on remand.


      s/ Arnold B. Goldin
      ARNOLD B. GOLDIN, JUDGE